Kevin **VALLIERE**, Plaintiff,

v.

Steven **KAPLAN**; **Daniel Waligurski**; **Officer Perciabosco**, (Star No. 586); and Other Unknown, Unnamed Officers of the Rolling Meadows Police Department and Cook County Sheriff's Department, City of Rolling Meadows, County of Cook, Defendants.

No. 88 C 1428.

United States District Court, N.D. Illinois, E.D.

Sept. 8, 1988.

Philip C. Parenti, Philip C. Parenti, Ltd., Mark D. DeBofsky, DeBofsky & DeBofsky, Chicago, Ill., for plaintiff.

Terry McDonald, Deborah M. Dooling, State's Atty. of Cook County, Richard T. Ryan, Flynn, Murphy & Ryan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Kevin Valliere brings six claims against Steven Kaplan, Daniel Waligurski, Officer Perciabosco, and other unknown, unnamed officers of the Police Department of the City of Rolling Meadows and the Sheriff's Department of Cook County. He brings these same six claims against the City of Rolling Meadows and Cook County. The defendants [1] have raised a wealth of issues

---

1. The parties have created quite a thicket in their arguments before this court, something that would have been fine had the parties not insisted that this court lead a hunt into it. In its motion to dismiss, the City of Rolling Meadows included the Rolling Meadows Police Department as a party-defendant. In its motion to dismiss, Cook County included Sheriff James O'Grady as a defendant. Valliere responded by referring to several parties collectively as the "County Defendants," but then he dropped claims against the collective that he appears to have never brought in the first place. This

in their motions to dismiss these claims pursuant to Rule 12(b)(6), Fed.R.Civ.P., and this court will dispose of many of them now.

These facts are taken from Valliere's complaint. The Rolling Meadows police arrested Valliere on the evening of August 22, 1987 on charges of criminal damage to property. During the course of the arrest, an officer struck Valliere and caused him to suffer cuts and abrasions. The officers then brought Valliere to department headquarters and detained him into the wee hours of August 23. During this time Valliere asserts that he was not told about the nature of the charges against him, nor was he allowed to contact his family or counsel. Instead, officers repeatedly abused him, both verbally and physically.

Eventually the police released Valliere, who decided to go home with his brother. As he was leaving, Valliere realized that he had left his jacket in the station house, and so he returned to fetch it. Words were spoken with two officers of the Rolling Meadows force, Kaplan and Waligurski, as well as with Officer Perciabosco of the Cook County Sheriff's Department. Valliere then alleges that an unknown officer threatened him with a gun, and that other officers dragged him into an inner office. They then began beating him about his head and body, resulting in bruises, more abrasions, and "injury to his mental well-being."

The charges that had led to Valliere's arrest were dropped, but the matter did not end there. Valliere filed suit in this court on February 18, 1988. In Count 1, he alleges that the conduct of the defendants deprived him of rights under the Fourth, Sixth, and Fourteenth Amendments to the Constitution. He brings this claim pursuant to 42 U.S.C. § 1983 (1982). In Counts 2–4, he brings pendent state tort claims of false imprisonment, assault, and battery. Count 5 contains a vague allegation that the City and the County were negligent in

allowing him to be attacked, while in Count 6 [2] Valliere alleges that the defendants intentionally inflicted severe emotional distress upon him.

The proper starting point is the County and the City's motions to dismiss Valliere's § 1983 claim against them. The City and the County argue that Valliere has not stated that the City or the County had a custom or practice of encouraging officers to rough up recently arrested persons, *see Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), and rather than join the issue, Valliere has agreed to drop Count 1 as to the City and the County. Nevertheless, Valliere wishes to maintain his other, non-federal claims against the City and the County, and he argues that this court can consider them as part of its pendent party jurisdiction. The City and the County oppose Valliere in this.

Valliere's request raises an important issue of federal jurisdiction, one that this court addressed recently in *Doe v. Bobbitt*, 682 F.Supp. 388 (N.D.Ill.1988). There, this court held that before it will consider extending its jurisdiction to cover pendent parties, the plaintiff must establish that (1) there is a federal claim of sufficient substance; (2) the federal and state claims are derived from a common nucleus of operative fact; and (3) the federal claim conferring subject matter jurisdiction does not implicitly negate a federal cause of action against the non-federal parties. *Id.* at 389.

Valliere can demonstrate that he meets these three conditions. First, while he has dropped his § 1983 claim against the City and the County, Valliere still has § 1983 claims pending against defendants Kaplan, Waligurski, Perciabosco, and other unknown officers. As this court explained in *Doe*, a claim has sufficient substance when it is more than frivolous or clearly meritless. *Id.* at 389. Valliere's § 1983 claim against the officers has sufficient substance, for if he establishes the facts alleged, he will have shown that the officers

---

court only hopes that the parties are better at shooting than they are at drawing maps.

2. In his complaint, Valliere mistakenly labelled Count 6 as Count 7. In the spirit of this quest, *see* note 1 above, this court will refer to Count 7 as Count 6.

violated at least his right under the Fourth Amendment to be free from unreasonable seizure.

Second, Valliere's state tort claims derive from the common nucleus of operative facts alleged in the § 1983 count. There Valliere alleges, in part, that officers unreasonably seized him. Count 2, Valliere's allegation of false imprisonment, is a variation on this constitutional claim, and Counts 3–6 relate to the actions of Valliere's captors during his brief confinement. These claims are factually connected, and a plaintiff would ordinarily expect to try them in one proceeding. *See Doe*, 682 F.Supp. at 389.

Last, this court held in *Doe* that § 1983 does not implicitly negate a federal cause of action against non-federal parties such as the City or the County. A party can sue a municipality under § 1983, even though the requirements for such a suit differ from the usual § 1983 action. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Tuttle*, 471 U.S. 808, 105 S.Ct. 2427.

Valliere has met his burden: he has demonstrated that this court *can* exercise jurisdiction over the City and the County. This court still must determine, however, whether it would be *wise* to do so. This court's experience in *Doe* aids this decision. There, this court chose to take jurisdiction over two pendent parties, one a supervisor of Cook County's guardian ad litem program and the other Cook County itself. It was not unusual in *Doe* to exercise pendent party jurisdiction over the supervisor, even though the federal claim to which Doe's state claims were attached was a § 1983 claim. *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1359–61 (7th Cir.1985) (Posner, writing separately but expressing majority view) (pendent party jurisdiction available over private individuals in § 1983 suits).

■ It was unusual, however, to exercise pendent party jurisdiction over Cook County. The Supreme Court's decisions in *Monell* and *Tuttle* illustrate that municipal governments have a peculiar status in § 1983 jurisprudence. As Judge Posner noted in *Moore*, 754 F.2d at 1359 (citation omitted):

> The positions of a county and of a private individual are not symmetrical. Although most local government is not within the protection of the Eleventh Amendment as it has been interpreted, there is a natural reluctance to assume that Congress would want local government to be suable in federal court under a jurisdictional concept ("pendent parties" jurisdiction) not mentioned in the Constitution, when Congress had decided not to make the conduct for which the local government had been haled into federal court a violation of federal law.

At least two courts in this district since *Moore* have followed Judge Posner's suggestion and have dismissed pendent state law claims against municipal defendants who were not amenable to suit under § 1983. *See Brown v. City of Chicago, Ill.*, 612 F.Supp. 1135 (N.D.Ill.1985); *Hornung v. Village of Park Forest*, 634 F.Supp. 540 (N.D.Ill.1986). While it would not be appropriate to adopt a bright-line rule as to when a court should exercise pendent party jurisdiction, *see Citizens Marine National Bank v. Department of Commerce*, 854 F.2d 223, 226–27 (7th Cir. 1988) ("the existence of pendent-party jurisdiction depends on the pros and cons of exercising such jurisdiction in particular circumstances"); *Doe*, 682 F.Supp. at 390 (court should consider judicial economy, litigants' costs, federal policies of access to courts, predominance of state claims, and the novelty and complexity of state issues), the district courts should exercise such jurisdiction over a municipal government reluctantly, especially in cases where a plaintiff has opted not to sue the municipality under § 1983. This court decided to exercise such jurisdiction over Cook County in *Doe*, but there extraordinary circumstances beyond the convenience to the plaintiff weighed in her favor: she was a minor who had alleged repeated sexual abuse at the hands of a relative. Rather than force her to recount this horrifying episode before two tribunals—something that might not

be in keeping with the policies of the State of Illinois, *see* Ill.Ann.Stats. ch. 38, ¶¶ 106A, 115–10 (Smith–Hurd 1988 Supp.) (special evidentiary provisions for minor complaining witnesses in criminal cases involving sexual abuse)—this court chose to spare the child the misery.

Valliere does not make out as strong a case for the exercise of pendent party jurisdiction as Doe. First, the bulk of Valliere's claims are state tort claims. Second, he raises an interesting issue of Illinois law in Count 5: does a municipality owe a duty to citizens or arrestees to protect them from abuse from police officers? That duty, if any, is certainly not as well-defined as that owed to a minor who is in the care of a municipality, and that weighs in favor of letting the state courts have the first look at Count 5. Last, an adult who alleges these intentional and negligent torts is in a less compelling position than a minor who alleges sexual abuse from relatives.

This court cannot emphasize enough that *Doe* was an exception, not the rule. Here the court will follow the rule, and thus Counts 2–6 against the City of Rolling Meadows and Cook County are dismissed for want of jurisdiction.

Next up is the motion of the Unnamed Deputies of the Cook County Sheriff's Department, who allege that Valliere cannot complain against unknown parties. That appears not to be the law in the Seventh Circuit. In *Maclin v. Paulson*, 627 F.2d 83, 87–88 (7th Cir.1980), and *Smith–Bey v. Hospital Adm'r*, 841 F.2d 751, 759 (7th Cir.1988), the Seventh Circuit allowed pro se plaintiffs to file suit against unknown defendants pending discovery to ascertain their names. Although Valliere has counsel to assist him, the thrust of *Maclin* and *Smith–Bey* is that, where a plaintiff names some but not all defendants, and discovery of unnamed defendants would be easy, a court should permit such discovery to proceed. *See also Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 390 n. 2, 91 S.Ct. 1999, 2001 n. 2, 29 L.Ed.2d 619 (1971). Valliere has named some of those who allegedly injured him, and thus this court will give Valliere the opportunity af-

forded the plaintiffs in *Maclin* and *Smith–Bey*. In the meantime, this court will not dismiss his counts against the Unknown Officers.

■ The Unknown Officers then join Officer Perciabosco in three attacks on the complaint. They argue first that Valliere has not alleged conduct that is actionable under § 1983 because § 1983 does not turn every state tort into a constitutional violation. They argue further that Valliere has not set forth the proper elements of an excessive force claim as described in *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987). The officers' first argument lacks merit, and the second misses the mark. Valliere has alleged that his seizure was illegal and unreasonable. His is not a state tort claim; it is an allegation of a violation of the Fourth Amendment. The officers' initial seizure may not have violated the Fourth Amendment—Valliere has not challenged the probable cause for the arrest, nor has he alleged that they used unreasonable force in effecting it. Valliere alleges that his second seizure, however, lacked probable cause altogether. This claim stands wholly apart from any suggestion that unreasonable force was used. Moreover, Valliere makes other claims under § 1983: he alleges that he was denied due process, equal protection, and access to counsel during his encounters with the police. The defendants have not challenged these claims. Valliere has thus alleged enough under Count 1 for it to survive a motion to dismiss under Rule 12(b)(6).

■ Next the Unknown Officers and Officer Perciabosco argue that Valliere cannot recover punitive damages from them, citing the case of *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Counsel for these defendants should read cases more carefully. While the Court in *Newport* held that a plaintiff could not recover punitive damages from a municipality, it did so in part because it determined that there were more effective, circumscribed means of deterring officer misconduct. One of these was punitive awards against individual officers. As the Court pointed out:

By allowing juries and courts to assess punitive damages in appropriate circumstances against the offending official, based on his personal financial resources, [§ 1983] directly advances the public's interest in preventing repeated constitutional deprivations.

*Id.* at 269, 101 S.Ct. at 2760–61. The Court thus plainly suggested that punitive damages are available against defendants such as the Unknown Officers and Officer Perciabosco. Such awards may be available even if the City of Rolling Meadows or Cook County has agreed to indemnify these officers. *See id.* at 269 n. 30, 101 S.Ct. at 2761 n. 30.

Officer Perciabosco next argues that Valliere has not alleged any misconduct on Perciabosco's part. In paragraph 8 of Count 1, however, Valliere alleges that Perciabosco participated in the illegal seizure of Valliere, and thus Valliere can proceed against Perciabosco in Count 1 and all relevant pendent claims. Which claims are relevant is not clear; Count 5, Valliere's negligence claim, states in part:

10. By reason of the foregoing, defendants, City of Rolling Meadows and County of Cook, and each of them owed to plaintiff a duty to protect him from bodily injury and mental distress.

11. Notwithstanding the foregoing duty, defendants were guilty of one or more of the following negligent acts or omissions:

a) Failure to protect Valliere from bodily harm while in their care and custody;

b) Failure of the municipal corporations to supervise their employees in the exercise of their duties as police officers in order to prevent harm to the general public and to Valliere;

c) Failure to use skill and care in the hiring and retention of the named and unknown, unnamed officers.

Complaint at 6–7. Now that the City and the County have been dismissed, it is not clear whether Count 5 should disappear, at least as far as it concerns Officer Perciabosco. Perciabosco has moved for a more definite statement of this count under Rule 12(e), Fed.R.Civ.P., and this court grants that motion.

■ The final matter before this court is the argument of all remaining defendants that Valliere has not stated a claim for intentional infliction of emotional distress in Count 6. Under Illinois law, the tort of intentional infliction of emotional distress is made out when (1) the conduct complained of is extreme and outrageous; (2) the conduct actually and proximately caused severe or extreme emotional distress; and (3) the actor intended to cause, or recklessly disregarded the probability that he would cause, emotional distress. *Debolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 113, 13 Ill.Dec. 656, 658, 371 N.E.2d 373, 375 (1978).

The parts of Valliere's complaint that pertain to the emotional distress count read as follows:

8. ... [W]ithout cause or provocation, one of the unknown officers threatened Valliere with his gun, and the other officers subsequently dragged Valliere into the Rolling Meadows Police Station, into an inner office, and began beating him about the head and body, directly and proximately causing bruises and abrasions about his head and body, as well as injury to his mental well-being; all of which was done with the intent and purpose of injuring, humiliating and embarrassing the plaintiff in the presence of the public and particularly of others who were present at the scene.

\*    \*    \*    \*    \*    \*

COUNT VII—INTENTIONAL INFLICTION OF MENTAL DISTRESS

\*    \*    \*    \*    \*    \*

10. The foregoing described conduct on the part of the officers was extreme and outrageous; and defendants either knew or should have known that their conduct was likely to cause emotional distress and in particular, that plaintiff would become frightened and intimidated. As a direct and proximate result of the foregoing, plaintiff suffered severe emotional distress.

Complaint at 3, 7. This court agrees with the defendants that Valliere has not pleaded all of the elements of intentional infliction of emotional distress under Illinois law. He has pleaded conduct that could be extreme and outrageous, *see Public Finance Corp. v. Davis*, 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (extreme or outrageous character of the act may arise from abuse of a position or relation with another); Restatement (Second) of Torts § 46 comment e (1965) (police officers among those who may be liable for abuse of position), and he has alleged that the conduct was intentional. Nevertheless, he has not pleaded extreme or severe distress to the satisfaction of this court. Valliere includes a conclusory statement that his distress was severe, but that is not in keeping with his statement in ¶ 8 that there was some "injury to his mental well-being," and that he was merely humiliated or embarrassed. As alleged, these injuries are not sufficiently severe under Illinois law. *See Davis*, 66 Ill.2d at 90, 4 Ill.Dec. 652, 360 N.E.2d 765.

For the foregoing reasons, the City of Rolling Meadows and Cook County's motions to dismiss Count 1 against them is granted. All remaining counts as to the City and the County are dismissed. Defendants Kaplan, Waligurski, Perciabosco, and the Unknown Officers of the Cook County Sheriff's Department's motions to dismiss Count 6 are granted. Defendant Perciabosco's motion for a more definite statement of Count 5 is granted. All other motions of defendants Kaplan, Waligurski, Perciabosco, and the Unknown Officers to dismiss are denied.