**Kevin VALLIERE, Plaintiff,**

v.

**Steven KAPLAN, Daniel Waligurski, and David Perciabosco, Defendants.**

No. 88 C 1428.

United States District Court,
N.D. Illinois, E.D.

Dec. 18, 1989.

Phillip C. Parenti and Mark D. DeBofsky, Chicago, Ill., for plaintiff.

Lenore MacDonald, Terry McDonald and Richard T. Ryan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On the evening of August 22, 1987, Rolling Meadows police officers arrested Kevin Valliere on charges of criminal damage to property. As a result of alleged mistreatment which he suffered after that arrest, Valliere sued two Rolling Meadows officers and an officer of Cook County Sheriff's Department, David Perciabosco. This court described Valliere's allegations in *Valliere v. Kaplan*, 694 F.Supp. 517, 518–19 (N.D.Ill.1989), and will not repeat that description here.

After ruling in *Valliere* that Valliere had valid claims against the three police officers, the court set the matter for trial. On December 20, 1988, a jury found the defendants not liable on Counts 1–2 and 4 of Valliere's complaint. These were claims of violations of Valliere's right to be free from excessive force under the Fourth and Fourteenth Amendments, assault, and intentional infliction of emotional distress, respectively. On Count 3, the jury returned a verdict in favor of Valliere and against Perciabosco on charges of battery, while finding that Perciabosco's co-defendants were not liable for battery. The jury awarded Valliere $100 in compensatory damages and $1000 in punitive damages for Perciabosco's battery.

**270**

■ Valliere has moved for entry of judgment notwithstanding the jury's verdict on Count 1, or in the alternative for a new trial. The rule which governs motions for judgment notwithstanding a jury's verdict is Rule 50(b), Fed.R.Civ.Pro. Under that rule, a party may not move for judgment notwithstanding the verdict unless that party has moved for a directed verdict pursuant to Rule 50(a). See also *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1388–89 (7th Cir.1984) (discussing requirement of motion for directed verdict). Valliere concedes that he made no such motion, and thus the court must deny Valliere's present motion for judgment notwithstanding the verdict.

■ This leaves Valliere's motion for a new trial. Rule 59(a) provides that the court may grant a new trial to any party "on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Valliere argues that he is entitled to a new trial because the jury's verdict on Count 1 in favor of Perciabosco cannot be reconciled with its verdict against him on Count 3. Since verdicts in civil cases must be consistent, see *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 677 (7th Cir.1985), Valliere claims that he deserves a new trial on Count 1. Of course, as *Will* instructs, a party may not assume when arguing that verdicts are inconsistent that the one in his or her favor is the correct verdict, while the inconsistent one is wrong. Thus, if Perciabosco could not be liable on Count 3 without being liable on Count 1, this court would have to grant a new trial on both counts. See *id.* at 677–78.

In claiming that a jury's verdicts are inconsistent, a party must base his or her argument on the court's instructions to that jury. See *Gallick v. Baltimore & Ohio R. Co.*, 372 U.S. 108, 118–20, 83 S.Ct. 659, 665–67, 9 L.Ed.2d 618 (1963); *Bates v. Jean*, 745 F.2d 1146, 1151 (7th Cir.1984) (special interrogatories); *Mulay Plastics, Inc. v. Grand Trunk Western R. Co.*, 822 F.2d 676, 681 (7th Cir.1987) (decided under Illinois law, but court notes congruence of federal and Illinois law on inconsistent jury verdicts). The court must regard the evidence presented in light of the instructions, and attempt to reconcile the claimed inconsistency before granting a new trial. The court may not grant a new trial unless no rational jury could have rendered the verdicts. See *Will*, 776 F.2d at 677–78; *Burlew*, 869 F.2d at 1068 (court must reconcile alleged contradictions in jury's answers to special interrogatories).

On the issues pertinent to the jury's consideration of Count 3, the court instructed the jury that in order to find that Perciabosco committed a battery, it had to find that he had "intentionally caus[ed] a harmful or offensive contact" with Valliere "without legal justification, and that said contact caused injury." Defendants' Instruction No. 18. The court also told the jury that a public employee such as Perciabosco "is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." Defendants' Instruction No. 17. The court defined "willful and wanton conduct" as "a course of action which shows actual or deliberate intention to harm." Plaintiff's Instruction No. 12 (Revised).

In addition to these instructions, the court explained the law of punitive damages to the jury. As part of that explanation, the court told the jury:

If you find from a preponderance of the evidence ... that the plaintiff is entitled to a verdict for actual or compensatory damages, and you further find that the act ... of the defendant, which proximately caused actual injury or damages to the plaintiff, was maliciously, or wantonly, or oppressively done, then you may add to the award of actual damages ... punitive and exemplary damages.

An act ... is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, ... toward the injured person....

Valliere contends that the jury could not have found that Perciabosco had battered

Valliere (despite Perciabosco's limited immunity) or that Perciabosco had battered him "maliciously, or wantonly, or oppressively" without also finding that Perciabosco had subjected Valliere to excessive force in violation of the Fourth and Fourteenth Amendments. The court based its instructions on Valliere's claim of excessive force on the Seventh Circuit's decision in *Lester v. City of Chicago*, 830 F.2d 706 (7th Cir. 1987). *Lester* defined excessive force as more force than is reasonably necessary under the circumstances, see *id.* at 713, and that is how this court defined excessive force for the jury in this case. See Defendants' Instruction No. 13B. The *Lester* court described its test for excessive force in violation of the Fourth and Fourteenth Amendments as "an objective analysis without regard to the officer's underlying intent or motivation. An objectively unreasonable seizure violates the Constitution regardless of an officer's good intent; likewise, an objectively reasonable seizure does not violate the Constitution despite the officer's bad intent." *Lester*, 830 F.2d at 712 (citations omitted).

On the instructions which they received and the evidence which they heard, the jury could have drawn the very distinction drawn by *Lester* in rendering a verdict in favor of Valliere on his claim of battery, but against him on his claim of excessive force. It is plausible that the jury believed Valliere when he testified that Perciabosco took him into an interrogation room, kicked a chair out from under him, and struck him. Valliere did not give a motive for Perciabosco's action, but Valliere had testified earlier that he had been rude and disrespectful to the police. Perciabosco testified that Valliere was loud and upset while he was in the interrogation room.

Valliere testified that Perciabosco's conduct scared him so much that Perciabosco's fellow officer had to ask Perciabosco to leave the room. From that time on at the station, Valliere told the jury, he reacted violently whenever he saw Perciabosco. From all of this the jury could have concluded that Perciabosco (1) intentionally had a harmful contact with Valliere, a contact which caused Valliere injury ($100

worth); (2) Perciabosco battered Valliere with the actual or deliberate intent to harm Valliere—that is, he acted "wilfully and wantonly"; and (3) ill will, brought on by Valliere's disrespect toward the police, prompted Perciabosco to batter Valliere—that is, Perciabosco acted "maliciously." The jury thus could have rendered a verdict in Valliere's favor on Count 3 and awarded him actual and punitive damages.

This does not end the story, however. The jury also could have concluded that a reasonable officer could have used the force which Perciabosco used against Valliere in an attempt to subdue Valliere for questioning. If the jury believed this, it was its duty to render a verdict against Valliere on Count 1, even though it believed that Perciabosco acted intemperately in restraining Valliere. As *Lester* notes, an officer's bad intent does not make his actions objectively unreasonable. An officer who acts with bad intent can act constitutionally. Nevertheless, just because an officer acts constitutionally does not mean that he is free from a suit under state law for redress of the injuries which he causes. If Illinois law permits a jury to assess actual or punitive damages against a person for his bad intent, then a person can sue for such damages, regardless if the bad actor did not violate the federal Constitution.

In summary, the court denies Valliere's motion for judgment notwithstanding the jury's verdict on Count 1 of his complaint. The court also denies Valliere's motion for new trial, as the jury's verdicts on Counts 1 and 3 with respect to defendant Perciabosco were not inconsistent.