PLUMBERS' PENSION FUND, LOCAL 130, U.A.; Plumbers' Welfare Fund, Local 130, U.A.; The Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A.; The Plumbing Council of Chicagoland; Plumbing Contractors Association of Chicago and Cook County, Plaintiffs,

v.

Robert NIEDRICH, and Denise Niedrich, Defendants.

No. 88 C 6996.

United States District Court, N.D. Illinois, E.D.

Dec. 5, 1988.

Douglas A. Lindsay, Thomas E. Brabec, Peter J. Crowley, Lewis, Overbeck & Furman, Chicago, Ill., for plaintiffs.

Kenneth T. Lopatka, John J. Dunbar, Jenner & Block, Chicago, Ill., for defendants.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Rob Roy Plumbing, Inc. was a plumbing contractor whose principal place of business was Cook County, Illinois. From January 1, 1976 through December 31, 1983, Rob Roy had collective bargaining agreements with the Chicago Journeymen Plumbers' Local Union 130, U.A. Under these agreements, Rob Roy promised to pay various funds—the plaintiffs in this case—various amounts, at stated contribution rates. See Complaint, Exhibits A–B. Article III of each collective bargaining agreement required the parties to submit all disagreements or disputes between them to a Joint Arbitration Board ("JAB"). See id., Exhibit C. One such disagreement arose over the amount Rob Roy owed the funds. Pursuant to their contract, the parties submitted this dispute to the JAB, which determined that Rob Roy owed the plaintiffs $25,066.78. The plaintiffs demanded payment, but Rob Roy refused to pay. The plaintiffs went to court and obtained a judgment for $23,020.90, but Rob Roy still did not pay.

The plaintiffs then learned, nearly a year later, that Rob Roy went out of business. In fact, the Illinois Secretary of State went so far as to dissolve Rob Roy on May 1, 1986. Naturally the plaintiffs were disappointed, and sought someone to pay Rob Roy's bills. They think they have found such persons in Robert and Denise Niedrich, the former president and secretary of Rob Roy. The plaintiffs filed suit against the Niedrichs in this court on August 12, 1988.

The plaintiffs seek recovery under two theories, one statutory, the other, contrac-

tual. The basis for their first claim is 29 U.S.C. § 1145 (1982), which is part of the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. §§ 1001 et seq. Section 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The plaintiffs base their contractual claim on the collective bargaining agreements themselves. The plaintiffs submit that this court has jurisdiction over suits for violations of these agreements under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C. § 185.

The Niedrichs have moved to dismiss both claims. Their principal argument with respect to each count is that they are not obligated to pay Rob Roy's liabilities—Rob Roy is. The Niedrichs' arguments are subtly different in each instance, since § 1145 actually defines the liability of an entity under ERISA, while § 301 determines the extent of this court's jurisdiction over a particular type of dispute. In order to decide whether the Niedrichs are correct, this court must interpret each statute, and weigh the Niedrichs' arguments in light of this court's interpretations.

The court begins with § 1145. This court will use the same method of interpretation employed in *Bastian v. Petren Resources Corp.*, 699 F.Supp. 161. (N.D.Ill. 1988). This court thus starts its analysis with the plain words of § 1145. Neither party disputes that the plaintiffs are multiemployer plans as that term is used in § 1145. They dispute the meaning of other words in § 1145, however—words which reflect ambiguities. While § 1145 appears to hold only the parties who so obligate themselves under a contract liable for multiemployer plan contributions—in this case, Rob Roy—ERISA defines "employer" as used in § 1145 as "any person acting directly as an employer, or indirectly in the

interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). The plaintiffs suggest that this definition widens the scope of liability under § 1145 beyond the person who actually obligated himself under the collective bargaining agreement. While Judge Grady ruled in *Laborers' Pension Fund v. Bakke Construction Co.*, 1987 U.S.Dist. LEXIS 10509, 14, [available on WESTLAW, 1987 WL 19818, 5] that the definition of "employer" "plain[ly]" made corporate officers liable under ERISA, Judge Grady did not reconcile the definition of "employer" with the obligation language of § 1145. Rather than recognizing a plain priority of the word "employer" over the word "obligated" in § 1145, this court finds a plain conflict between the terms.

This court thus must rely on other methods of interpreting § 1145. The context of the words "employer" and "obligated" provides a little help, as the language of § 1145 repeatedly stresses its purpose: making the contractual obligations of employers to multiemployer plans enforceable as a matter of federal law. Section 1145 emphasizes contracts no fewer than four times, in addition to its use of the word "obligated." It seems strange that in making contracts for plan contributions a matter of federal law, Congress would have gone beyond the law of contracts and held persons who are not parties to the contract —constructive or otherwise—liable for contractual obligations. Still, this court cannot ignore ERISA's broad definition of "employer." Given the Congress's desire to provide "minimum standards ... assuring the equitable character ... and ... financial soundness" of benefit plans through ERISA, see 29 U.S.C. § 1001(a), it is not inconceivable that Congress would have expanded the traditional scope of contractual obligations. See *Gambino v. Index Sales Corp.*, 673 F.Supp. 1450, 1454–55 (N.D.Ill.1987) (Shadur, J.) (while not justifying expansion beyond ERISA's terms, the social purposes of the Act support broad liability under § 1145 when other indicators

of legislative intent point in the same direction).

In *Bastian,* when this court exhausted the methods of interpreting a statute such as the plain meanings of the words themselves, their context, and the reasonableness of the contending interpretations, this court turned to the legislative history. The court will proceed no differently in this case. Fortunately, unlike in *Bastian,* several courts have had the opportunity to examine the legislative history of the statute in dispute here. Unfortunately, these courts are in conflict.

This court will begin with the historical analyses of § 1145 undertaken by those courts which sit in this district. Judge Shadur presented the first and most exhaustive of these analyses in *Gambino.* In that case, the trustees of a multiemployer pension trust sued the Index Sales Corporation, as well as Index's president, director, and sole shareholder, Donald Keenan. As a signatory to the collective bargaining agreement that required contributions to the pension trust, Index admitted its liability. Keenan disputed his own, and so Judge Shadur had to decide the very issue posed here. The evidence revealed that there was no factual basis for piercing Index's "corporate veil" under Illinois law. Nevertheless, Keenan was Index's Chief Operating Officer, and he directed all of the company's labor relations, its corporate operations, and its financial transactions—including all matters relating to payments to the pension trust. *Gambino,* 673 F.Supp. at 1451–52.

Judge Shadur first canvassed earlier decisions that had considered the question of individual liability for corporate obligations to multiemployer plans. He noted that district courts in the First Circuit had "consistently held such personal liability existed," and that Judge Warren of the Eastern District of Wisconsin had followed the lead of these courts. Judge Shadur then summarized the various appellate interpretations of § 1145, suggesting that the First Circuit had "pointed the way" toward control-person liability in *Donovan v. Agnew,* 712 F.2d 1509 (1st Cir.1983), but noting

that the Third and Ninth Circuits had ruled to the contrary except in cases where a court could pierce the corporate veil. *Gambino,* 673 F.Supp. at 1452–53 & n. 4.

Before this court traces Judge Shadur's opinion further, it should be noted that since *Gambino,* the First Circuit reversed the line of district court decisions on which Judge Shadur relied and distinguished *Agnew* in cases involving control-person liability under § 1145. See *Mass. Laborers' Health & Wel. F. v. Starrett Paving,* 845 F.2d 23, 26 (1st Cir.1988). Similarly, the D.C.Circuit has joined the First, Third, and Ninth Circuits in holding that controlling persons are not liable under § 1145, absent a claim that the corporation is the person's alter ego or that it is prudent to pierce the corporate veil. See *Intern. Broth. of Painters v. George A. Kracher,* 856 F.2d 1546 (D.C.Cir.1988). Thus, whatever power Judge Shadur's opinion has must derive from the force of his reasoning, and not from its foundation in precedent.

Having examined the precedents, Judge Shadur addressed the very question posed here: the extent to which the word "obligated" in § 1145 narrows the broad definition of "employer" in § 1002(5). Judge Shadur held that § 1145 could not limit § 1002(5) to those persons who signed the contract. He reasoned that such a reading "would allow no room at all for the Section 1002(5) definition of 'employer' to include persons 'acting indirectly . . . in the interest of the employer,'" nor would it allow for piercing of the corporate veil. Judge Shadur's fear was that if § 1145 limited § 1002(5), it would render § 1002(5) "a nullity." Presuming that Congress did not speak to the issue "in a wholly idle manner," Judge Shadur held that there had to be some room for personal liability for corporate obligations under § 1145. *Gambino,* 673 F.Supp. at 1453–54.

It was thus Judge Shadur's task to determine where personal liability began and ended. To aid him in this task, the Judge turned to the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 201 et seq., which contains many provisions that are identical to those in ERISA. Judge

**654**

Shadur considered the Supreme Court's decision in *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1974), which interpreted FLSA's nearly parallel definition of "employer" and held that a person who had "substantial control of the terms and conditions of the work" of employees was liable for violations of FLSA, even if that person was not the nominal employer. Judge Shadur then noted that the "uniform judicial reading" of FLSA's definition of "employer", both before and after *Falk* and ERISA,

> has been that such a broad-sweep definition was intended to strip away that insulation where the corporation-controlling individual has opted to prefer the payment of other corporate debts to the payment of obligations running to corporate employees and given special statutory recognition by Congress.

The Judge then concluded that as the courts had "implemented that intention under FLSA, ... they should do no less under ERISA's substantively identical provisions." *Gambino,* 673 F.Supp. at 1454–55 (footnote omitted).

Judge Shadur felt that his conclusion was superior to that reached by the Third and Ninth Circuits because they had not considered the parallel definition of "employer" in FLSA. He reasoned that, were their interpretations of § 1145 to prevail, a court would be compelled to overrule the entire line of FLSA cases that weighed in favor of control-person liability. *Id.* at 1455–56 & n. 12. Judge Shadur was correct in this observation, as both the Third and Ninth Circuits had reached their result by limiting ERISA's definition of "employer" in § 1002(5), and not by relying on the "obligated" language of § 1145. See *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 764 (9th Cir.1981); *Solomon v. Klein,* 770 F.2d 352, 353–54 (3d Cir.1985).

Were this case solely about § 1002(5), Judge Shadur's logic would be unassailable: it would be folly to interpret identical language in FLSA and ERISA differently for each statute, absent a clear indication from the context or history of the two provisions. But this is not a case of identi-

cal provisions, as ERISA's § 1145 has no counterpart in FLSA. While this court agrees with Judge Shadur that, in using the expansive term "employer" in § 1145, Congress did not limit liability under § 1145 only to signatories of plan and collective bargaining agreements, this court cannot accept the Judge's determination that FLSA's definition of employer determines liability under ERISA's § 1145. Rather, if a court must refer to the legislative history of a statute to determine its meaning, it should start with the history of the provision itself, and not the history or meaning of other statutes.

This court thus turns to the legislative history of § 1145, which the First Circuit canvassed in *Starrett.* There the court noted that Congress wished to impose a federal statutory duty only on those employers " 'that are *already contractually obligated* to make contributions to multiemployer plans.' " *Starrett,* 845 F.2d at 25, quoting The Multiemployer Pension Plan Amendments Act of 1980, S. 1076, Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess. 44 (Comm.Print 1980) (emphasis added). The *Starrett* court also noted that its view of the primacy of contractual obligations in § 1145 was consistent with the Supreme Court's position in *Laborers' Health & Welfare Tr. v. Adv. Light Con.,* 484 U.S. 539, 108 S.Ct. 830, 835–36, 98 L.Ed.2d 936 (1988), that Congress enacted § 1145 to provide employers with incentives to honor their contracts. *Starrett,* 845 F.2d at 25.

The *Starrett* court also addressed Judge Shadur's concern in *Gambino* that emphasizing contracts in § 1145 would render § 1002(5) a nullity, or at least prevent a court from piercing the corporate veil in § 1145 cases. The court noted first that, while its holding did limit the effect of § 1002(5) in § 1145 cases, "the expanded definition could still make a different elsewhere in [ERISA]." This observation allowed the *Starrett* court to strike the proper balance between the enactment of § 1145—a provision that has no parallel in FLSA—and Judge Shadur's reasoning that, where Congress has copied language from one statute to another, the courts should

interpret the language consistently in each. The court reasoned that the broad definition of "employer" in § 1002(5) would continue to play an important role in those instances where Congress looked to FLSA, but not in those instances where Congress did not rely on FLSA. As for Judge Shadur's view of corporate veils, the *Starrett* court remarked that piercing that veil under state or federal common law was entirely consistent with the language of § 1145, since the owner in that instance would be the corporation for purposes of ERISA, and obligated under the state or federal law of contracts to pay a benefit plan. *Starrett*, 845 F.2d at 25–26.

This court is mindful of its duty to give proper deference to the opinions of those who sit in this same district. This court has considered the views of Judges Shadur, Grady, and Moran in *Gambino, Bakke*, and *Serembus v. Comfort Lines, Inc.*, 689 F.Supp. 1496 (N.D.Ill.1988), respectively, and finds that they are not as convincing as that expressed in *Starrett*. The cases from this district rely on precedents that have been overruled or narrowed, and they have not considered the legislative history of § 1145 as described in *Starrett*. This court does not share Judge Shadur's concern that a refusal to incorporate FLSA's standard of employer liability in § 1145 will render it and § 1002(5) of ERISA nullities. In light of this and the unanimous opinions of those Courts of Appeals that have decided the issue presented here to the contrary of the decisions in *Gambino, Bakke*, and *Serembus*, this court holds that unless there are grounds to pierce the corporate veil or the corporation is the alter ego of the controlling individual, that individual is not liable under § 1145 unless he or she is a party to the plan or collective bargaining agreement. Because the plaintiffs here have not alleged that Rob Roy's corporate veil warrants piercing, this court must dismiss Count 1 of the Complaint for failure to state a claim upon which this court can grant relief.

This court now turns to Count 2. The Niedrichs contend that the plaintiffs cannot sue them in this court under § 301(a) of LMRA because the Niedrichs were not parties to Rob Roy's collective bargaining agreement. In *Loss v. Blakenship*, 673 F.2d 942, 946–48 (7th Cir.1982), the court affirmed the general principle that persons who are not parties to a collective bargaining agreement cannot be sued under the LMRA. The only exception that the court recognized to this rule was for "suits against one owing a 'fiduciary duty' to the plaintiff." *Id.* at 948, quoting *Nedd v. United Mine Workers of America*, 556 F.2d 190, 198 n. 13 (3d Cir.1977). The plaintiffs do not contest *Loss*, nor have they alleged in their complaint that the Niedrichs owed them a fiduciary duty. They make one suggestion in their Brief in Response to Defendants' Motion to Dismiss that since the Niedrichs are employers for purposes of ERISA, they should be amenable to suit under the LMRA. The plaintiffs cite no authority for this proposition, however, nor do they present any reason as to why this court should broaden the holding of *Loss*. For this reason, this court must dismiss Count 2 for want of jurisdiction.

In summary, this court grants the Niedrichs' motion to dismiss Count 1 of the Complaint for failure to state a claim, and grants their motion to dismiss Count 2 for lack of jurisdiction.