**LABORERS' PENSION FUND and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and the Laborers' District Council of Chicago and Vicinity, Plaintiffs,**

v.

**LITGEN CONCRETE CUTTING & CORING CO., an Illinois corporation, and William R. Litgen, Defendants.**

No. 88 C 8531.

United States District Court, N.D. Illinois, E.D.

March 22, 1989.

Hugh B. Arnold, Jac A. Cotiguala, Arnold & Kadjan, Chicago, Ill., for plaintiffs.

Michael P. Davis, McNeil Stokes, Stokes, Shapiro, Fussell & Wedge, Atlanta, Ga., Arthur B. Smith, Jr., Robert P. Casey, Murphy, Smith & Polk, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Judicial development of the law is usually slow. There are a number of reasons for this: some types of disputes do not arise as frequently as others; similar types of disputes will encompass different facts, allowing for different modes of disposition. A statute of limitations can bar claims raised in one suit, but not the other; parties' differing assessments as to the merits of their case can result in early settlement for one case and trial for the other.

Against this backdrop, the dispute presently before this court affords it a unique opportunity to explain a relatively recent decision of this court, as well as develop the law within it further. In October 1988, two funds, the Laborers' Pension Fund and the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, and the Laborers' District Council filed suit in this court to recover over $2.2 million in delinquent fringe benefit contributions and unpaid wages from Litgen Concrete Cutting and Coring Company. They also sought to recover the money from Litgen's president and 40% shareholder, William R. Litgen. Their complaint consists of six counts. Counts 1, 2, and 6 charge that Litgen Concrete alone is liable for the unpaid amounts. Counts 3, 4, and 5 claim that William is liable.

William has moved for summary judgment on all of the counts pending against him. Under the Federal Rules of Civil Procedure, a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Once a party moves for summary judgment,

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Rule 56(e).

The uncontested facts are as follows: George and William Litgen incorporated Litgen Concrete on April 6, 1979. George and William are officers and directors of Litgen Concrete, along with Brent Zanini. The Litgen brothers each hold 40% of Litgen Concrete's shares, while Zanini holds

the rest. There is no evidence that any of these individuals uses his personal funds to pay corporate expenses, or vice versa. The corporation is in good standing. The officers swear, and there is no evidence to the contrary, that Litgen Concrete properly maintains its corporate records, has adequate capital to operate as a going concern, and can meet its financial obligations.

On February 11, 1983, one of Litgen Concrete's supervisors, Michael O'Hara, signed a "Memorandum of Joint Working Agreement" with the Laborers' District Council. O'Hara signed on behalf of Litgen Concrete, which the Agreement lists as the "Employer." The plaintiffs contend that the Agreement was a collective bargaining agreement that obligated Litgen Concrete and William Litgen to make the payments in dispute in this case. Litgen Concrete and William deny this.

Based on the undisputed facts, William claims that this court cannot hold him liable to the plaintiffs under Count 3, 4, or 5. The court will examine Count 4 first. There the plaintiffs contend that William "is obligated to make contributions pursuant to 29 U.S.C. [§] 1145 [ (1982) ]" to the Welfare and Pension Funds. Additionally, the plaintiffs allege that William is liable for an extension of credit in violation of 28 U.S.C. § 1106(a)(1)(B).

This court discussed the scope of liability under § 1145 just three months ago in *Plumbers' Pension Fund, Local 130, U.A. v. Niedrich*, 701 F.Supp. 651 (N.D.Ill.1988). In *Niedrich*, a union pension fund sued the president and secretary of a dissolved corporation for unpaid contributions to various union funds. The union brought suit under both § 1145 and § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185. The union contended that under both statutes the principals of the dissolved corporation were liable for the corporation's contractual obligations to the union's funds.

In considering the union's arguments, this court looked directly at the language of § 1145, which states:

> Every employer who is obligated to make contributions to a multi-employer plan ... under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such ... agreement.

In light of this language and the legislative history of § 1145, this court rejected the union's claims of broad liability under this provision. Instead, the court held that in cases involving employers who are corporations, "unless there are grounds to pierce the corporate veil or the corporation is the alter ego of the controlling individual, that individual is not liable under § 1145 unless he or she is a party to the plan or collective bargaining agreement." *Id.* at 655.

■ *Niedrich* controls this case. It is undisputed that the parties to the alleged collective bargaining agreement here were the Laborers' District Council and Litgen Concrete. The only person or entity arguably obligated to contribute to the Laborers' funds under the agreement is Litgen Concrete. As this court noted in *Niedrich*, William Litgen is liable for Litgen Concrete's obligations under the agreement only if the court can pierce Litgen Concrete's corporate veil or Litgen Concrete is the alter ego of William Litgen.

The plaintiffs contend that *Niedrich* allows this court to hold William Litgen liable even without piercing veils or finding alter egos—that as William is a "party in interest" under 29 U.S.C. § 1002(14) with respect to the Welfare and Pension Funds, he is directly liable in actions brought under § 1145. The plaintiffs misconstrue *Niedrich*. Section 1145 does not employ § 1002(14)'s definition of a "party in interest." If Congress had wished parties in interest with respect to plans to be liable for unpaid contributions under § 1145, it could have chosen those words. Rather, Congress chose to single out "employers" for liability under § 1145, and even then only particular employers: those "obligated to make contributions ... under the terms of a collective bargaining agreement...." And as this court held in *Niedrich*, only those employers who enter into a collective bargaining agreement are subject to liability under § 1145.

■ This court thus affirms its ruling in *Niedrich* that when a corporation has obligated itself under a collective bargaining agreement to contribute to a multi-employer plan, a controlling person of the corporation is not liable for unpaid contributions under § 1145 unless the court can pierce the corporation's veil of limited liability or the corporation is the alter ego of the controlling person. The plaintiffs argue that this case presents an occasion for the court to hold such a person, namely, William Litgen, so liable. The plaintiffs argue in both Counts 3 and 4 that Litgen Concrete is the alter ego of William Litgen, and for this reason William is liable for Litgen Concrete's unpaid contributions and wages.

■ The decision whether to pierce a corporate veil or hold a controlling person liable under the narrower, stricter doctrine of corporate alter ego in cases arising under the Employee Retirement Income Security Act ("ERISA") is a matter of federal and not state law. See *Firestone Tire and Rubber Company v. Bruch*, — U.S. —, —, 109 S.Ct. 948, 950, 103 L.Ed.2d 80 (1989), quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987) (federal courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans"). Owing to the small number of instances where federal common law applies, there are few cases that explain the federal common law of disregarding the corporate fiction. The Supreme Court has noted in several instances that the limited liability of corporations is the rule, and not the exception. See, for example, *Anderson v. Abbott*, 321 U.S. 349, 361–62, 64 S.Ct. 531, 537–38, 88 L.Ed. 793 (1944) (citations omitted) ("Normally the corporation is an insulator from liability on claims of creditors. The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose. Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted."); *Bangor Punta Operations v. Bangor & A.R. Co.*, 417 U.S. 703, 713, 94 S.Ct. 2578, 2584, 41 L.Ed.2d 418 (1974). The courts are free to ignore the corporate form, however, in order to advance the dictates of public policy. Courts frequently take such a step in order to defeat fraud, remedy gross undercapitalization of the enterprise, prevent circumvention of the law, or elevate the substance of a transaction over its form. See *Anderson*, 321 U.S. at 362–65, 64 S.Ct. at 537–39; *Bangor Punta*, 417 U.S. at 713, 94 S.Ct. at 2584; *Evans Products Co. v. I.C.C.*, 729 F.2d 1107, 1110 (7th Cir.1984); see generally William Meade Fletcher, 1 Cyclopedia of the Law of Private Corporations §§ 41–41.20 (Rev. ed. 1983) (hereafter "Corporations").

Before a court will disregard the limited liability of the corporation, "there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Id.* at § 41.30 (footnote omitted). See also *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir.1979); *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir. 1984) (Kennedy, J.); *Contractors, Laborers, Teamsters & Engin. v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985); *Alman v. Danin*, 801 F.2d 1, 4 (1st Cir.1986). Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form "bears the burden of proving that there are substantial reasons for doing so." *Hroch*, 757 F.2d at 190.

As Fletcher notes in his treatise, the question of whether the court should disregard a corporation's limited liability is usually one of fact. See Fletcher, 1 Corporations at § 41.95. Here the facts are undisputed. Litgen Concrete is a corporation in good standing. It maintains its corporate records, has adequate capital, and is a going concern. There is no evidence that any of its three officer/directors commingles his funds with that of the corporation, or vice versa. There also is no evidence that the identities of Litgen Concrete and those of its officer/directors have merged.

■ Based on these undisputed facts, the court holds that the plaintiffs have not given this court substantial reasons for ignoring Litgen Concrete's corporate form. The plaintiffs have submitted no evidence indicating a unity of interest and ownership between Litgen Concrete and William Litgen. The fact that Litgen Concrete is a closely held corporation is insufficient evidence standing alone to warrant piercing of Litgen Concrete's corporate veil. The plaintiffs' blanket denials of Litgen Concrete's affidavit testimony are similarly insufficient to avoid summary judgment on the question of William Litgen's personal liability for Litgen Concrete's obligations. See Rule 56(e) (party opposing summary judgment must set forth specific facts showing that there is a genuine issue for trial).

Even if this court were to assume that William Litgen and Litgen Concrete were one, the plaintiffs still would have to demonstrate that it would be unjust to limit their recovery on Litgen Concrete's obligations to Litgen Concrete alone. The plaintiffs have submitted no facts demonstrating, for example, that William Litgen incorporated Litgen Concrete to defraud the plaintiffs or circumvent the law. The plaintiffs also have submitted no evidence that, were this court to hold Litgen Concrete liable, Litgen Concrete could not pay the judgment. Of course, were such to be the case, and the plaintiffs established the other prerequisite for piercing Litgen Concrete's corporate veil, the plaintiffs could bring another action to pierce the veil and recover from Litgen Concrete. See *Alman*, 801 F.2d at 3–4 (union could seek to recover ERISA judgment from former owners of closely held, but defunct and assetless, corporation once union discovered after judgment the true financial position of corporation).

■ This court thus holds that, on the evidence presently before the court, the plaintiffs may not recover unpaid contributions owed to them under § 1145 from William Litgen. The plaintiffs assert another basis for William Litgen's liability in Counts 3 and 4, however: 29 U.S.C.

§ 1132(a)(2). That provision of ERISA states: "A civil action may be brought ... by a participant, beneficiary, or fiduciary for appropriate relief under section 1109 of this title." Broadly speaking, 29 U.S.C. § 1109 imposes liability for breach of fiduciary duties. The plaintiffs claim that William Litgen has participated in a breach of the duty imposed by 29 U.S.C. § 1106(a)(1)(B), which states that, unless ERISA provides otherwise, "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest."

The plaintiffs misconceive who here owes a duty under § 1106(a)(1)(B). The plaintiffs claim that, because Litgen Concrete has refused to pay moneys which it owes the Welfare and Pension Funds, the Welfare and Pension Funds have "extended" credit to William Litgen. As noted earlier, William Litgen is a party in interest, see *id.* at § 1002(14)(H), as is Litgen Concrete, see *id.* at § 1002(14)(C). Yet William Litgen and Litgen Concrete are separate individuals. Even if the court were to treat the Funds as having "extended credit" to Litgen Concrete by reason of the corporation's failure to pay its bills—a somewhat whimsical assumption—there is nothing in ERISA that allows a plan to recover a loan from a party in interest who did not receive the loan. Moreover, § 1106(a)(1)(B) enjoins the *fiduciary* from extending credit. Section 1002(21)(A) of ERISA states that, except as otherwise provided,

a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation ... with respect to any moneys or property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Never have the plaintiffs submitted evidence that William Litgen was a fiduciary with respect to the decision of the Funds to "extend credit" to Litgen Concrete. While he certainly exercises authority over Litgen Concrete's affairs, this court would be surprised to learn that William holds any authority, discretionary control, or responsibility with respect to management or administration of the plaintiffs' funds or assets. See *Leigh v. Engle*, 727 F.2d 113, 133–34 (7th Cir.1984) (persons are fiduciaries only to the extent they perform fiduciary functions). The court thus holds that based on the evidence presently before this court, the court cannot hold William Litgen liable under 29 U.S.C. § 1132(a)(2) and grants summary judgment in favor of him on Counts 3 and 4 of the Complaint.

The court now turns to Count 5. There the plaintiffs claim that William is liable for Litgen Concrete's unpaid contributions under the Ililnois Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, ¶ 39m–1 et seq. (Smith–Hurd Ann.1986). The court notes initially that Count 5 presently raises a question regarding this court's jurisdiction over a pendent party, as the court has dismissed all federal claims pending against William. This court has treated the issue of pendent party jurisdiction on two recent occasions. See *Doe v. Bobbitt*, 682 F.Supp. 388 (N.D. Ill.1988); *Valliere v. Kaplan*, 694 F.Supp. 517 (N.D.Ill.1988). Since those decisions, which reviewed the Supreme Court and Seventh Circuit precedents on the topic, the Seventh Circuit has weighed in with yet another discussion of pendent party jurisdiction, this one in *Huffman v. Hains*, 865 F.2d 920 (7th Cir.1989). There the court discussed the two steps that are necessary to determine if pendent party jurisdiction exists in a case:

> First, the court must examine whether the constitutional power to exercise jurisdiction exists. Second, the court must examine whether Congress has limited the court's power to exercise pendent party jurisdiction in the specific statutory provison conferring federal jurisdiction in that case.

*Id.* at 922.

This court has the constitutional power to exercise jurisdiction here. The plaintiffs' other federal claims have sufficient substance, so as to create a live controversy, and the question of William's obligations under state law shares a common nucleus of law and fact with the plaintiffs' federal claims. The parties thus could expect to try them in one proceeding. See *id.* at 922; *Valliere*, 694 F.Supp. at 519–20. As for Congress's thoughts on the matter, neither party claims that a federal statute counsels against taking jurisdiction, as was the case in *Valliere*. Count 5 thus meets the minimum requirements for pendent party jurisdiction.

This does not end the matter, however. As the existence of pendent party jurisdiction is a "subtle and complex" matter, see *Aldinger v. Howard*, 427 U.S. 1, 2, 96 S.Ct. 2413, 2414, 49 L.Ed.2d 276 (1976), the ultimate decision whether to exercise that power "rests in the district court's discretion." *Huffman*, 865 F.2d at 923; see also *Valliere*, 694 F.Supp. at 520 (question of whether court can exercise pendent party jurisdiction is separate from that concerning the wisdom of such an exercise). Here William Litgen asserts that two federal statutes preempt the state statute at issue in Count 5. This court believes that William puts forth a solid case for preemption under the LMRA, see *Nat. Metalcrafters, Div. of Keystone v. McNeil*, 784 F.2d 817, 828 (7th Cir.1986), and likewise a majority of courts has held that ERISA preempts state wage collection claims like those in Count 5. See *Com. v. Frederico*, 383 Mass. 485, 419 N.E.2d 1374 (1981) (citing cases). The Supreme Court has granted certiorari to address ERISA's preemption of a state law that is very similar to the Illinois act in dispute here. See *Com. v. Morash*, 402 Mass. 287, 522 N.E.2d 409 (1988), cert. granted, — U.S. —, 109 S.Ct. 53, 102 L.Ed.2d 31 (1988).

Questions involving federal preemption of state laws are delicate. Because of this, and the likelihood of a significant Supreme Court decision in this area, this court believes that it is prudent not to exercise pendent party jurisdiction in this case. This court thus declines the plaintiffs' invi-

tation to hear their state law claims in Count 5.

For these reasons, the court grants William Litgen summary judgment on Counts 3 and 4 of the plaintiffs' complaint, and dismisses Count 5 of the complaint for want of subject matter jurisdiction.