891 F.2d 1297
 58 USLW 2447, 11 Employee Benefits Cas. 2571
 PLUMBERS' PENSION FUND, LOCAL 130, U.A., Plumbers' Welfare
Fund, Local 130, U.A., the Trust Fund for
Apprentice and Journeyman Education and
Training, Local 130, U.A.,
Plaintiffs-Appellants,
The Plumbing Council of Chicagoland, Plumbing Contractors
Association of Chicago and Cook County, Plaintiffs,
v.
Robert NIEDRICH and Denise Niedrich, Defendants-Appellees.
 No. 89-1015.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 26, 1989.
Decided Dec. 19, 1989.
 
 Paul V. Esposito (argued), Douglas A. Lindsay, Thomas E. Brabec, Peter J. Crowley, Lewis, Overbeck & Furman, Chicago, Ill., for plaintiffs-appellants.
 Kenneth T. Lopatka, John J. Dunbar (argued), Jenner & Block, Chicago, Ill., for defendants-appellees.
 Before COFFEY and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 COFFEY, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, Plumbers' Pension Fund, Local 130, U.A., Plumbers' Welfare Fund, Local 130, U.A., and the Trust Fund for Apprentice and Journeyman Education and Training, Local 130, U.A. (hereinafter "Funds") appeal from the district court's dismissal of their complaint that sought to obtain from the defendants-appellees, Robert Niedrich and Denise Niedrich, president and secretary, respectively, of Rob Roy Plumbing, Inc. ("Rob Roy") delinquent contributions owed to the Funds under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.[1] We affirm.
 
 I.
 
 2
 Because this case arises on a motion to dismiss, our review is confined to the limited facts set forth in the Funds' complaint. The Funds' complaint alleges that Rob Roy Plumbing, Inc., ("Rob Roy") and the Chicago Journeyman Plumbers' Local Union 130, U.A. ("Union") entered into a collective bargaining agreement effective January 1, 1976 and terminating on December 31, 1983. Under the terms of this agreement the plumbing firm (Rob Roy) was obligated to make periodic contributions to the plaintiff Funds. The complaint alleges that Robert Niedrich and Denise Niedrich, respectively the former president and secretary of Rob Roy, "exercised control over and acted on behalf of Rob Roy in matters pertaining to employee relations, including employee benefits." The complaint further alleges that when Rob Roy failed to make contributions to the plaintiff Funds, the Union and the Funds requested and were granted arbitration pursuant to the agreement.
 
 
 3
 A joint arbitration board established under the agreement awarded the plaintiff Funds, the Plumbing Council of Chicagoland and the Plumbing Contractors Association of Chicago and Cook County $25,066.78.[2] Rob Roy failed to pay the amount designated in the arbitration award and the plaintiff Funds, together with the Plumbing Council of Chicagoland and the Plumbing Contractors Association of Chicago and Cook County filed a complaint against Rob Roy requesting enforcement of the arbitration award.[3] On August 12, 1985, judgment was entered, pursuant to the complaint, against Rob Roy Plumbing, Inc. in the amount of $23,020.90.[4] Rob Roy failed to satisfy the judgment and the Illinois Secretary of State dissolved the plumbing firm on May 1, 1986.
 
 
 4
 On August 12, 1988, the plaintiff Funds, the Plumbing Council and the Plumbing Contractors Association filed this action individually against Robert and Denise Niedrich, respectively the former president and secretary of Rob Roy. The complaint alleged that the Niedrichs were personally liable for the delinquent contributions to the plaintiffs under ERISA and sought from each defendant $23,020.92 together with interest and attorneys' fees. The complaint alleged that the Niedrichs had violated 29 U.S.C. § 1145[5] because their exercise of control over and actions on behalf of Rob Roy "in matters pertaining to employee relations, including employee benefits" meant that they were "employers" within the meaning of 29 U.S.C. § 1002(5)[6] and, thus, personally liable for Rob Roy's delinquent contributions. The district court held that the complaint did not allege facts sufficient to establish that Rob Roy's corporate veil should be pierced.[7] In their brief before this court, plaintiffs-appellants concede that neither of these factors is present.
 
 
 5
 The Niedrichs moved to dismiss the complaint for failure to state a claim upon which relief can be granted on the grounds that under ERISA they could neither be classified as "employers" nor as parties who had unilaterally and contractually agreed to make contributions to the plaintiffs. In view of the fact that the defendants were parties to neither the plan nor the collective bargaining agreement, the district court held that "unless there are grounds to pierce the corporate veil or the corporation is the alter ego of the controlling individual, that individual is not liable under § 1145 unless he or she is a party to the plan or collective bargaining agreement." Plumbers' Pension Fund, Local 130, U.A. v. Niedrich, 701 F.Supp. 651, 655 (N.D.Ill.1988). Because the plaintiffs had not alleged that the Niedrichs were parties to the plan or to the collective bargaining agreement, that Rob Roy's corporate veil warranted piercing or that Rob Roy was the Niedrichs' alter ego, the district court dismissed the complaint. The plaintiff Funds appeal from the district court's ERISA decision.[8]
 
 II.
 
 6
 The Funds' action against the Niedrichs under ERISA was dismissed for failure to state a claim upon which relief may be granted.
 
 
 7
 "We review such a dismissal de novo. The well-pleaded factual allegations of the complaint and all reasonable inferences which follow from the allegations must be taken as true. A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "
 
 
 8
 Corcoran v. Chicago Park District, 875 F.2d 609, 611 (7th Cir.1989) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957)) (citation omitted).
 
 
 9
 On numerous occasions in similar factual situations courts of appeals have had the opportunity to address the question of whether individuals acting as corporate officers or shareholders can be held personally liable for a corporation's ERISA obligations. These courts have unanimously held, as the court held in this case, that unless the corporation is acting for and an alter ego of the individual or there exist facts that warrant piercing the corporate veil, the individual will not be held liable for the corporation's obligations under ERISA. See Rockney v. Blohorn, 877 F.2d 637, 639-43 (8th Cir.1989) ("[C]orporate officers cannot be held personally liable under ERISA where there is no basis for piercing the corporate veil"); Scarbrough v. Perez, 870 F.2d 1079, 1082-85 (6th Cir.1989) (Unless facts warrant piercing the corporate veil separating the corporate employer from its owner-chief executive, the owner-executive will not be held liable for the corporation's delinquent pension contributions); International Brotherhood of Painters v. George A. Kracher, Inc., 856 F.2d 1546, 1547-50 (D.C.Cir.1988) (Corporation's chief officer and principal shareholder is not liable for corporation's delinquent contributions in the absence of allegations that he personally was a party to the plan or collective bargaining agreement and where there are no allegations that the corporation was an alter ego or of conduct that would require piercing the corporate veil); Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp., 845 F.2d 23, 24-26 (1st Cir.1988) (Corporation's president and sole shareholder is not liable for corporation's delinquent pension contributions unless it can be established that he was acting other than as a company officer and had, thus, personally contractually obligated himself to guarantee pension contributions); Solomon v. Klein, 770 F.2d 352, 353-55 (3rd Cir.1985) (In the absence of allegations of alter ego status or that warrant piercing the corporate veil, or of a contractual obligation, president of corporation who was also fifty percent stockholder was not personally liable for delinquent contributions to a retirement fund); Operating Engineers Pension Trust v. Reed, 726 F.2d 513, 515 (9th Cir.1984) (Kennedy, J.) ("An owner of a corporation will be held personally liable for trust fund contributions if (1) there is little or no respect shown to the separate identity of the corporation; (2) recognition of the corporation as a separate entity would result in injustice to the litigants; and (3) there was a fraudulent intent behind the incorporation").
 
 
 10
 In Levit v. Ingersoll Rand Financial Corp., 874 F.2d 1186, 1192-94 (7th Cir.1989); we noted our general agreement with the rationale of these cases. Levit was a bankruptcy case that did not approach the issue of a corporate officer's liability for pension contributions in the usual context of a pension fund's attempt to recover delinquent contributions from a corporate officer.[9] Nonetheless, we were required to determine whether a corporate officer could be held personally liable for a corporation's pension contributions in the absence of a contract personally binding him to these obligations. In resolving this question we turned to Section 515 of ERISA, 29 U.S.C. § 1145 that requires "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." We stated that under Section 515:
 
 
 11
 "Only 'an employer who is obligated to make contributions to' a plan under an agreement need do so. Such an employer must make contributions 'in accordance with the terms and conditions of such plan or such agreement.' Even if a manager or other officer is an 'employer' under § 3(5) [of ERISA], the plan or other agreement still governs what each must do, for not all 'employers' are 'obligated to make contributions' under the 'terms and conditions' of a plan or agreement. [Central States Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir.1989) (en banc) ] holds that these documents will be strictly enforced. Exactitude works both ways. Just as pension and welfare funds get no less than the agreements provide, so they get no more.... Several plans obtained Richard Deprizio's [the corporate officer] personal commitment, as co-maker of notes with Deprizio Co. Other plans had only Deprizio Co.'s commitment to pay. Section 515 requires us to honor the difference between these engagements."
 
 
 12
 Levit, 874 F.2d at 1193 (emphasis in original). As well as emphasizing the language of Section 515 of ERISA, we relied upon an opinion letter of the General Counsel of the Pension Benefit Guaranty Corp., the agency that insures multi-employer pension funds, that stated that " 'ERISA has no special rules regarding shareholder-officer liability. Accordingly, this issue is usually determined by state law, which generally provides that shareholders are not liable for the debts of a corporation.' " Levit, 874 F.2d at 1193 (quoting General Counsel of the Pension Benefit Guaranty Corp., Opinion Letter 82-38 (December 14, 1982)). We further noted the precedent of other courts stating:
 
 
 13
 "Courts routinely rebuff efforts to collect pension debts from managers and investors unless the officer or investor would be liable for the firm's other debts under state law--in other words, unless courts would 'pierce the corporate veil' in light of the structure and operation of the particular firm."
 
 
 14
 Levit, 874 F.2d at 1193. In light of the administrative interpretation of ERISA and the controlling case law we concluded:
 
 
 15
 "It would take a compelling argument to persuade us to depart from an interpretation of the law adopted by a responsible agency and followed by so many courts. Inferences from the importation into ERISA of a few words from the [Fair Labor Standards Act] do not satisfy that standard.
 
 
 16
 An officer who does not make a contractual commitment to a pension or welfare plan still could be personally liable, to the extent he is liable for general corporate debts under state corporate law. But when state law recognizes a separate identity of manager and firm, liability under ERISA depends on the contents of the plan and related agreements."
 
 
 17
 Levit, 874 F.2d at 1194 (citation and footnote omitted).
 
 
 18
 We see no reason to alter, much less overturn, our decision in Levit concerning personal liability under ERISA and we apply Levit's analysis here. It is undisputed that the Niedrichs were neither parties to the Pension Plan nor the collective bargaining agreement that obligated the firm Rob Roy Plumbing, Inc. to contribute to the Pension Plan. Thus, the Niedrichs were not personally obligated to make contributions to the Pension Plan. Furthermore, there is no allegation that Rob Roy was an alter ego of the Niedrichs or of facts sufficient to warrant piercing Rob Roy's corporate veil. Accordingly, the Levit analysis mandates dismissal of the complaint for failure to state a claim upon which relief may be granted.
 
 
 19
 The plaintiff Funds contend that their complaint states a claim upon which relief may be granted, even under Levit, as Illinois state law would require a conclusion that the Niedrichs were personally liable for Rob Roy's delinquent pension contributions. The plaintiff Funds cite the language in Section 13 of the Illinois Wage Payment and Collection Act, Ill.Ann.Stat. ch. 48, p 39m-13 (Smith-Hurd 1986), that states "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." The basic difficulty with the Funds' position is that, in the context of pension contributions, the Illinois Wage Payment and Collection Act is expressly preempted by ERISA. See Arnold v. Babcock and Wilcox Co., 123 Ill.2d 67, 121 Ill.Dec. 253, 256-57, 525 N.E.2d 59, 62-63 (1988). Although the Funds acknowledge that ERISA preempts a cause of action under the Illinois Wage Payment and Collection Act, they assert that Section 13 of that Act is nevertheless applicable to this case because of Levit's holding that the personal liability of officers is to be determined under "state corporate law." Levit, 874 F.2d at 1194. We disagree with the plaintiffs' contention. Although Levit establishes that "[a]n officer who does not make a contractual commitment to a pension or welfare plan still could be personally liable, to the extent he is liable for general corporate debts under state corporate law," id. at 1194, we are not of the opinion that Section 13 of the Illinois Wage Payment and Collection Act provides an appropriate basis for establishing this liability under state law. By its very words this section proscribes and limits actions under the Illinois Wage Payment and Collection Act, a law that cannot be applied to pension contributions as a result of ERISA's preemptive scope.[10] Since the plaintiffs-appellants Funds fail to cite any of the Illinois statutory or case law that would render the Niedrichs personally liable for Rob Roy's delinquent pension contributions in this case, we hold that Illinois state law does not provide a ground for the Funds' cause of action that could prevent the dismissal of the Funds' complaint.
 
 
 20
 Corporate officers who are not parties to a pension plan or a collective bargaining agreement requiring contributions to a pension plan are personally liable for pension contributions only to the extent they are liable for general corporate debts under state corporate law. Because the complaint fails to allege facts demonstrating that Rob Roy was the Niedrichs' alter ego, that Rob Roy's corporate veil should be pierced, a personal contractual guarantee to pay pension contributions or any other basis for establishing the Niedrichs' personal liability under state law, we hold that the district court action dismissing the plaintiff Funds' complaint was proper. The decision of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 The Plumbing Council of Chicagoland and the Plumbing Contractors Association of Chicago and Cook County were also plaintiffs in the district court. However, these two plaintiffs have chosen not to appeal the district court's decision
 
 
 [2]
 This amount was divided among the various parties as follows: Plumbers' Pension Fund--$10,491.76, Plumbers' Welfare Fund--$12,576.01 (including 5 percent late payment charge), Trust Fund for Apprentice and Journeyman Education and Training--$952.34, Plumbing Council of Chicagoland--$735.46, and Plumbing Contractors Association of Chicago and Cook County--$311.21
 
 
 [3]
 The complaint does not state the court in which this complaint was filed. The Plumbing Council of Chicago and the Plumbing Contractors Association of Chicago and Cook County were also parties to the state court lawsuit
 
 
 [4]
 The complaint does not explain the discrepancy between the $23,020.90 amount the court awarded and the $25,066.78 amount the arbitration board had awarded
 
 
 [5]
 29 U.S.C. § 1145 reads:
 "Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."
 
 
 [6]
 29 U.S.C. § 1002(5) reads:
 "For purposes of this subchapter:
 * * *
 (5) The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity."
 
 
 [7]
 Plumbers' Pension Fund, Local 130, U.A. v. Niedrich, 701 F.Supp. 651, 655 (N.D.Ill.1988). Although the district court did not explicity conclude that the complaint failed to allege that Rob Roy was an "alter ego" of either defendant, it is clear from the court's dismissal of the Funds' ERISA claim that it concluded that Rob Roy was not the "alter ego" of either defendant
 
 
 [8]
 The district court also determined that it lacked jurisdiction over the plaintiffs' action against the Niedrichs under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), on the basis of this court's decision in Loss v. Blankenship, 673 F.2d 942, 946-48 (7th Cir.1982), that "affirmed the general principle that persons who are not parties to a collective bargaining agreement cannot be sued under the LMRA." Niedrich, 701 F.Supp. at 655. Plaintiff Funds do not appeal from this holding
 
 
 [9]
 Levit arose in the context of a bankruptcy trustee's attempts to recover funds a bankrupt corporation had paid to a pension fund. The trustee attempted to establish that the bankrupt corporation's "insiders" were potentially liable for the corporation's pension contributions, meaning that payments to the pension funds reduced the insider's exposure to liability. The trustee also attempted to demonstrate the related fact that the insiders were "creditors" as they would "hold contingent claims against the debtor if [the insiders] should be called on to satisfy [the corporation's] debts to the pension and welfare funds...." Levit, 874 F.2d at 1192
 
 
 [10]
 Section 13 of the Illinois Wage Payment and Collection Act, III.Ann.Stat. ch. 48, p 39m-13 (Smith-Hurd 1986) provides:
 "Any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."
 (Emphasis added).