MOBIL OIL CORPORATION, Plaintiff,

v.

LINEAR FILMS, INC. and
Advo–System, Inc.,
Defendants.

Civ. A. No. 87–397–JLL.

United States District Court,
D. Delaware.

June 27, 1989.

Charles S. Crompton, Jr., of Potter, Anderson & Corroon, Wilmington, Del., Douglas W. Wyatt, Thomas A. O'Rourke, and Frederick J. Dorchak of Wyatt, Gerber, Burke & Badie, New York City, and Alexander J. McKillop and Lawrence O. Miller of Mobil Oil Corp., Fairfax, Va., of counsel, for plaintiff.

E. Norman Veasey and Robert W. Whetzel of Richards, Layton & Finger, Wilmington, Del., and Charles H. De La Garza and Mark V. Seeley of Arnold, White & Durkee, Houston, Tex., of counsel, for defendants.

## OPINION

LATCHUM, Senior District Judge.

Two motions are presently before the Court in this patent infringement action. Resolution of certain corporation law issues determines the outcome of these motions.

The first motion is a request by defendants for summary judgment.[1] For the reasons set forth below, the Court will grant summary judgment in favor of the defendant Delaware corporation Linear Films, Inc.

Also at bar is plaintiff's motion under Rule 25(c), Fed.R.Civ.P., to add (or substitute) the Oklahoma corporation Linear Films, Inc., as a party defendant. As explained *infra*, this motion will be denied.

## I. BACKGROUND FACTS

The following background facts underlying this lawsuit are not in dispute. The relevant facts are listed in chronological sequence.

On October 4, 1979, Linear Films, Inc. was incorporated in the State of Oklahoma. (Docket Item ["D.I."] 11 at 9; D.I. 75 at 8; D.I. 75, Ex. C at ¶ 3-1; D.I. 75, Ex. E at ¶ 1.4.) For the sake of clarity, this corporation shall be referred to throughout this opinion as the "Oklahoma corporation." In 1980 the Oklahoma corporation began making and selling stretch film.[2] (D.I. 11 at 6; D.I. 75 at 8-9; D.I. 75, Ex. C at ¶ 3-5.) The Oklahoma corporation and/or its affiliates have continued to produce and sell stretch film from 1980 to date.[3] (D.I. 11 at 9-10; D.I. 75 at 8-9; D.I. 75, Ex. C at ¶¶ 3-4, 3-5, 3-9.)

Plaintiff in this action is Mobil Oil Corporation ("Mobil"). Mobil is the assignee of two patents entitled "Coextruded Thermoplastic Stretch–Wrap." (*See* D.I. 26, Ex. A, B.) The two patents, both of which were issued in 1983, are United States Patent Nos. 4,399,180 and 4,418,114. (*Id.*)

On June 14, 1985, a second corporation named Linear Films, Inc. was formed; this one in Delaware. (D.I. 11 at 9; D.I. 75, Ex. C at ¶¶ 3-2, 3-6; D.I. 75, Ex. E at ¶ 1.4.) This corporation shall be identified herein as the "Delaware corporation." The Delaware corporation became the corporate parent of the Oklahoma corporation, holding all of its outstanding stock. (D.I. 11 at 10; D.I. 26, Ex. C at ¶ 3.2; D.I. 75, Ex. C at ¶¶ 3-2, 3-3, 3-6; D.I. 75, Ex. E at ¶ 3.1.) Thus for a period of time there were two corporations in existence having the name Linear Films, Inc.—the Delaware parent company and its Oklahoma subsidiary corporation. In this opinion the term "Linear" will refer generally to either the Delaware corporation or the Oklahoma corporation, or to both. Subsequently on September 16, 1985, the Oklahoma corporation formally changed its name from Linear Films, Inc., to Linear Films of Oklahoma, Inc. (D.I. 11 at 6 n. 1, 9; D.I. 75, Ex. C at ¶ 3-1; D.I. 75, Ex. E at ¶ 2.3.)

Plaintiff Mobil commenced this action on July 23, 1987, by filing its original Complaint for patent infringement in this Court. (D.I. 1.) Plaintiff named the Delaware corporation as a defendant, alleging that it has sold film which infringes Mobil's patents for coextruded thermoplastic stretch wrap film. (D.I. 1 at ¶ 8.) Also named as a defendant was Advo–System, Inc. ("Advo"), a corporation chartered and having a place of business in Delaware. (D.I. 1 at ¶ 3.) Advo is engaged in the business of direct mail advertising. (D.I. 11 at 11; D.I. 75, Ex. D at ¶ 2-2.) It has purchased some quantities of Linear's stretch film through a Connecticut distributor, using the stretch film as a wrapping and shipping material for advertisements which it mails on behalf of its clients.[4]

---

1. Originally brought as a motion to dismiss, this motion has been converted into one for summary judgment pursuant to Rule 12(b), Fed.R. Civ.P.

2. As described by defendants, the stretch films are "use[d] as wrapping materials for items such as manufactured goods which have been loaded on wooden pallets.... The films may generally be characterized as industrial or commercial strength kitchen wrap, like the well known 'HANDIWRAP' films." (D.I. 11 at 4.)

3. Whether the stretch film has been manufactured and sold at all relevant times by the *Oklahoma corporation alone* (as defendants assert), or by the Oklahoma corporation's *affiliates as well* (as plaintiff alleges), is a point of some contention, at least facially. *See* part II.A. of this opinion, *infra*.

4. There is no allegation that Advo is affiliated in any way with Linear, aside from its purchases of Linear's film products. Defendants represent that Advo accounts for a relatively small portion of Linear's sales of stretch film, never having

(D.I. 11 at 11; D.I. 75, Ex. D at ¶¶ 2–1 to 2–3.) Mobil claims that Advo has used stretch wrap film which infringes Mobil's coextruded stretch wrap film patents. (D.I. 1 at ¶ 9.) While joining Advo and the Delaware corporation (*i.e.* Linear Films, Inc.) as defendants, Mobil's original Complaint did not name the Oklahoma corporation (*i.e.* Linear Films of Oklahoma, Inc.) as a party.

On October 23, 1987, the Oklahoma corporation brought a lawsuit against Mobil in the United States District Court for the Northern District of Oklahoma (the "Oklahoma litigation"). (*See* D.I. 26, Ex. C.) The Oklahoma litigation, which is still pending, arises from essentially the same operative facts underlying the instant action in this Court. The Complaint in the Oklahoma litigation is framed in three counts. In the first Count, the Oklahoma corporation seeks declarations that Mobil's patents for coextruded thermoplastic stretch wrap are invalid and unenforceable, and that the Oklahoma corporation has not infringed. (D.I. 26, Ex. C at ¶¶ 1.1 to 4.7.) In Count II, the federal court in Oklahoma is asked to adjudge and decree that Mobil's efforts to enforce its patents—including Mobil's prosecution of the infringement lawsuit in this Court—violate federal antitrust law.[5] (D.I. 26, Ex. C at ¶¶ 5.1 to 6.9.) Finally, by way of Count III, the Oklahoma corporation posits that Mobil has committed acts of unfair competition under the common law of Oklahoma. (D.I. 26, Ex. C at ¶¶ 7.1 to 8.2.)

In response to the Oklahoma litigation, Mobil amended its Complaint in this case on April 15, 1988. (*See* D.I. 26.) In addition to claiming patent infringement, Mobil now asks this Court for declarations that Mobil: (a) has not violated the antitrust laws by bringing this action for patent infringement; and (b) has not committed acts of common law unfair competition.[6] (D.I. 26 at ¶¶ 14–28.) In amending its Complaint, Mobil still did not name the Oklahoma corporation as a party defendant.[7]

On July 15, 1988, after a public tender offer had led to a change in control of Linear, the Delaware parent corporation was merged into its Oklahoma subsidiary. (D.I. 74 at 6, 50; D.I. 75, Ex. B at ¶ 1.) The surviving Oklahoma corporation thereupon changed its name from Linear Films of Oklahoma, Inc., back to its previous name: Linear Films, Inc. (D.I. 74 at 6, 50; D.I. 75, Ex. A at ¶ 1; D.I. 75, Ex. B at ¶ 1.)

## II. MOTION FOR SUMMARY JUDGMENT

The gist of defendants' summary judgment motion is that Mobil simply sued the wrong party. To the extent Linear infringed Mobil's patents at all, defendants argue that such infringement was by the Oklahoma subsidiary corporation, not by the Delaware parent. (*See* D.I. 11 at 2, 10, 25; D.I. 21 at 2, 6–10.) Only the Delaware corporation is presently a defendant in this case; its Oklahoma subsidiary is not. Accordingly the defendants seek entry of summary judgment in favor of the defendant Delaware corporation, maintaining that Mobil has failed to state a claim upon which relief can be granted.

Summary judgment is appropriate only if there is no genuine issue as to any material fact. Rule 56(c), Fed.R.Civ.P. The non-moving party (Mobil) need only demonstrate the existence of a genuine issue of material fact in order to avert summary judgment. *See Anderson v. Liberty Lob-*

---

purchased more than 0.3% of Linear's output in any given year. (D.I. 11 at 11; D.I. 75, Ex. D at ¶ 2–4.)

**5.** Specifically, the Oklahoma corporation asserts that Mobil has violated section 2 of the Sherman Act, 15 U.S.C. § 2.

**6.** Mobil requests a declaration that it "has not committed acts of unfair competition in violation of the common law of the State of *Delaware.*" (D.I. 26 at ¶ 25 [emphasis added].) In

contrast, the Complaint in the Oklahoma litigation charges Mobil with "unfair competition under the common law of the State of *Oklahoma.*" (D.I. 26, Ex. C at ¶ 7.2 [emphasis added].) The reason for this discrepancy is not apparent from the record.

**7.** The Court notes, without deciding, that naming the Oklahoma subsidiary as a party defendant in either the original or the amended Complaint might have presented jurisdictional and/or venue problems.

*by, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Yet Mobil cannot merely rest upon allegations or denials contained in the pleadings to establish such a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Rule 56(e), Fed.R.Civ.P.

"[A] motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for [the finder of fact] finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring). In its posture as the plaintiff in this patent infringement action, Mobil would bear the burden of proving at trial that the Delaware corporation had infringed its patents. *Lemelson v. United States,* 752 F.2d 1538, 1547 (Fed. Cir.1985); *Wolens v. F.W. Woolworth Co.,* 703 F.2d 983, 987 (7th Cir.1983); *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 605 F.Supp. 1362, 1376 (D.Del. 1985), *aff'd,* 793 F.2d 1279 (Fed.Cir.1986). Thus Mobil can avoid summary judgment only if it designates specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553; Rule 56(e), Fed.R.Civ.P.

Mobil has endeavored to point out material issues of fact which would necessitate a trial. Based upon Mobil's 52–page brief in opposition to the summary judgment motion (D.I. 74), the 1,000–plus page appendix filed in conjunction therewith (D.I. 74A, 74B), and the oral arguments of counsel (*see* D.I. 77), the Court is able to discern three theoretically conceivable bases for finding the Delaware corporation liable for patent infringement. Whether, as a matter of law, any of these three theories can possibly apply in view of the undisputed facts of this case, will be considered in the following sections of this opinion.

### A. *Direct Infringement*

■ The first of three plausible theories by which the Delaware corporation might be held liable is that it *directly* infringed

Mobil's patents. That is, Mobil would undertake to prove at trial that the Delaware corporation itself made, sold or used stretch wrap film in violation of Mobil's patent rights.

Defendants vigorously dispute the notion that the Delaware corporation could have directly infringed Mobil's patents. (*See* D.I. 11 at 2, 10, 25; D.I. 21 at 2, 6–10; D.I. 75 at 11, 14–16, 24.) To support their position, defendants introduced evidence through the affidavits of various officers and directors of the Delaware and Oklahoma corporations. The affidavits and exhibits thereto emphasize the following facts.

The Delaware corporation was formed in 1985 for the sole purpose of acquiring all of the stock of certain other corporations, including the Oklahoma corporation. (D.I. 75, Ex. C at ¶ 3–6 [First Affidavit of Michael Baab]; D.I. 75, Ex. E at ¶ 3.1 [Waddel Affidavit]; D.I. 75, Ex. F at ¶ 3.4 [Second Affidavit of Michael Baab]; D.I. 75, Ex. F–7 [excerpts from Linear's 1987 Form 10–K].) During its existence the Delaware corporation functioned as a stock holding company for its subsidiaries. (D.I. 75, Ex. E–4 [Oklahoma Articles of Domestication filed on behalf of the Delaware corporation]; D.I. 75, Ex. F at ¶ 3–4.)

The Oklahoma corporation has always been and remains the manufacturer of the stretch film which Mobil has accused of infringing its patents. (D.I. 75, Ex. C at ¶ 3–9.) The Oklahoma corporation has at all times held title to the plants, machinery and equipment used to make the accused stretch film. (*Id.*) The Delaware corporation, on the other hand, has never *produced* any product of any kind. (*Id.* at ¶ 3–10; D.I. 75, Ex. F at ¶ 3–4.) Likewise it has not *sold* any products. (D.I. 75, Ex. F–8 [excerpts from Deposition of Michael Baab at p. 83].)

Defendants submitted copies of the Oklahoma Annual Franchise Tax Returns filed for both the Oklahoma corporation (D.I. 75, Ex. F–10) and for the Delaware corporation (D.I. 75, Ex. F–11) as exhibits to the second affidavit of Michael Baab. Information contained in the Franchise Tax Returns is

particularly telling. Schedule 7 of each Franchise Tax Return requires a description of the nature of the business of the particular corporation. The returns filed for the Oklahoma corporation contain the following description: "Manufacture Polyethylene Film." (D.I. 75, Ex. F–10.) In striking contrast, the Delaware corporation responded to the same inquiry as follows: "Holding company for the above mentioned subsidiaries."[8] (D.I. 75, Ex. F–11.)

Schedule 2 of each Franchise Tax Return requires the corporation to specify the "Total amount of business done by the corporation" for the year in question. Franchise Tax Returns filed for the Oklahoma corporation indicate that it generated over $17 million and $35 million of business for its fiscal years ended on June 30, 1985 and 1986 respectively. (D.I. 75, Ex. F–10, Schedule 2.) The above figures consist entirely of manufacturing sales. (*Id.*, Schedule 8.) Markedly different is the level of business conducted by the Delaware corporation. According to its Franchise Tax Return, the "Total amount of business done by the [Delaware] corporation" is zero. (D.I. 75, Ex. F–11, Schedules 2, 8.)

Finally, the Franchise Tax Returns require the reporting entity to present balance sheet information. The Oklahoma corporation reported total assets in excess of $14 million and $27 million as of March 31, 1984 and 1986 respectively. (D.I. 75, Ex. F–10, Schedule 8.) Its assets were comprised, *inter alia,* of the following categories: land; buildings and structures; machinery and equipment; accounts receivable; and inventory. (*Id.*) Such assets are obviously characteristic of a manufacturing/operating entity. Meanwhile the Delaware corporation reported total assets of more than $30 million as of March 31, 1986, consisting entirely of its ownership of stock in its subsidiaries. (D.I. 75, Ex. F–11, Schedule 8.)

The foregoing affidavits and attachments constitute strong evidence in support of the defendants' position that the Delaware corporation never produced or sold any products, and that it therefore could not have directly infringed Mobil's patents. For its part plaintiff contends that the Delaware corporation did indeed manufacture and sell the accused products, thereby infringing Mobil's patents.

> Mobil filed this case in Delaware, because it honestly believed, based on Defendant Linear's outward representation to the public and Government agencies, that the Delaware corporation manufactured and sold the accused products. It turns out that such outward representations reflected the reality of how these corporations were operated.

(D.I. 74 at 8 [Plaintiff's Brief in Opposition to Defendants' Summary Judgment Motion].) *See also* D.I. 77 at 6–7 (Transcript of Oral Argument) ("[T]he Delaware corporation was the manufacturer.... [¶ ]The Delaware corporation was the operating company.").

Plaintiff's statements are merely arguments, not evidence. It has produced no affidavits or other evidence contemplated by Rule 56(e), Fed.R.Civ.P., from which a reasonable factfinder could conclude that the Delaware corporation directly made or sold stretch film, thereby infringing upon Mobil's patent rights. Mobil has filed an extensive brief (D.I. 74) with an appendix (D.I. 74A, 74B) in opposition to the defendants' summary judgment motions. In these filings plaintiff essentially advances theories by which the Delaware corporation might be held liable indirectly or vicariously for patent infringement actually perpetrated at the hands of its Oklahoma subsidiary. Such theories are examined in the two sections of this opinion immediately following. However the Court holds, as a matter of law, that the Delaware corporation could not have *directly* infringed Mobil's patent because the uncontroverted evidence establishes that it did not make or sell any stretch film.

### B. *Alter Ego Theory*

The second of three theories advanced by plaintiff for holding the Delaware corpora-

---

**8.** The reference to the "above mentioned subsidiaries" includes the Oklahoma corporation, Linear Films of Oklahoma, Inc. (*See* D.I. 75, Ex. F–11, Schedule 5.)

tion liable is that the Delaware corporation *indirectly* infringed Mobil's patents through the actions of its Oklahoma subsidiary. The Oklahoma corporation was allegedly operated as a mere "alter ego" of the Delaware corporation. Thus, argues plaintiff, even if the only infringement actually perpetrated was by the Oklahoma corporation and not by its Delaware parent, the latter corporation remains liable for such infringement because it is legally responsible for the transgressions of its alter ego.

The terminology used by courts in considering whether a parent corporation will be held liable for the actions of its subsidiary has not been a model of clarity. Plaintiff's so-called "alter ego theory" is often used interchangeably with such expressions as "disregarding the corporate entity" and "piercing the corporate veil." *See, e.g., Phoenix Canada Oil Co. Ltd. v. Texaco, Inc.,* 842 F.2d 1466, 1476 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 259, 102 L.Ed.2d 247, *cert. denied,* — U.S. —, 109 S.Ct. 273, 102 L.Ed.2d 262 (1988); *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831, 839–40 (D.Del.1978). A subsidiary found to be the "alter ego" of its parent company could likewise be designated its "instrumentality." *See* 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 43, at 209 (cum.supp.1988) (hereinafter cited as *Fletcher*). In addition, some courts use the word "agent" to describe what is essen-

tially the same relationship contemplated by the term "alter ego." [9]

In analyzing the aforementioned theories, the Court will confine its discussion to the term "alter ego." Yet regardless of the precise nomenclature employed, the contours of the theory are the same. A subsidiary corporation may be deemed the alter ego of its corporate parent where there is a lack of attention to corporate formalities, such as where the assets of two entities are commingled, and their operations intertwined. An alter ego relationship might also lie where a corporate parent exercises complete domination and control over its subsidiary.[10] *See generally* Annotation, *Liability of Corporation for Torts of Subsidiary,* 7 A.L.R.3d 1343 (1966).

In support of its alter ego theory, plaintiff alleges a number of facts, many of which are uncontroverted. Plaintiff notes that the Delaware corporation, throughout its existence, held all of the stock of the Oklahoma corporation. (D.I. 74 at 42–43.) The Delaware corporation guaranteed certain debts of its Oklahoma subsidiary. (*Id.* at 39.) Plaintiff further asserts that following the formation of the Delaware corporation and the name change of the Oklahoma corporation from Linear Films, Inc. to Linear Films of Oklahoma, Inc., the Oklahoma corporation continued to advertise, issue invoices, use letterhead, and en-

---

**9.** Use of the term "agent" in this context is particularly unfortunate, because it is easily confused with the pure agency theory to be considered separately in part II.C. of this opinion, *infra.* Liability based upon a pure agency theory does not require the ownership of one entity by another. For example one corporation may agree to act as the agent for a second corporation with respect to a particular transaction. If in so doing the agent corporation commits a tort against a third party, its principal might be held liable, irrespective of whether or not the agent corporation is owned by the principal corporation. Liability, if found to exist in such a situation, would simply be grounded upon standard principles of agency law. *See Phoenix Canada Oil v. Texaco,* 842 F.2d at 1477.

When, on the other hand, the word "agent" is used synonymously with "alter ego," ownership of the agent corporation by the principal corporation would appear to be necessary.

**10.** Where there is general domination and control by a corporate parent over its subsidiary, courts are especially prone to substitute the term "agent" for "alter ego." Again this Court must emphasize the distinction between such an agency theory, and the pure agency theory considered in part II.C. of this opinion, *infra.*

Where an agency or alter ego relationship is premised upon the parent's domination and control, such domination and control may be general in nature and "need not have any particular relationship to the cause of action being asserted." *Phoenix Canada Oil v. Texaco,* 842 F.2d at 1477. In contrast, a plaintiff wishing to hold a parent corporation liable under the pure agency theory "must demonstrate a relationship between the corporations and the cause of action." *Id.* "Under this [pure agency] theory, total domination or general alter ego criteria need not be proven." *Id.*

ter contracts under its previous name—Linear Films, Inc. (*Id.* at 35–38.) Mobil alleges that the Delaware corporation and the Oklahoma corporation shared common officers and directors. (*Id.* at 31–32, 39, 43–44.) It claims that no minutes were kept or agendas prepared for board of directors meetings of the Oklahoma corporation, separate and apart from those for the Delaware corporation. (*Id.* at 17–18, 33–34.) The Delaware corporation's board of directors allegedly approved the hiring and salaries of officers of the Oklahoma corporation, as well as other major expenditures and policies involving the subsidiary. (*Id.* at 19–20, 22–25, 30–31.) In addition, obligations of the Delaware corporation were paid from the Oklahoma corporation's bank account. (*Id.* at 25–30, 39–40.)

The foregoing factual allegations, if accurate, demonstrate that the Delaware corporation and the Oklahoma corporation were closely connected. Also, the Linear entities were less than steadfast in their observation of corporate formalities. Nevertheless, these facts standing alone are insufficient for the alter ego theory to operate to pierce the corporate veil. An additional element is required. As detailed below, the Delaware corporation can be held liable under the alter ego theory for infringement by its Oklahoma subsidiary only if its use of the corporate form would, if left unchecked, work as a fraud or something in the nature of a fraud. Mobil has alleged no such fraud or injustice. Accordingly, for the reasons outlined below, the Court finds that plaintiff's alter ego theory cannot apply in this case.

A potential issue in the alter ego analysis involves determining which body of substantive law should be applied. The possible sources of law are three-fold: (1) Oklahoma, the state of incorporation of the entity which would be disregarded; (2) Delaware, the state of incorporation of the parent corporation which would be held liable, and also the state in which this Court is situate; and (3) federal common law, this being a federal question case brought in a federal district court.

The parties have neglected to address thoroughly the choice of law question. *Compare* D.I. 75 at 5–6 & n. 2 (defendants' brief, reciting their view of the alter ego doctrine under both Delaware and Oklahoma law) *and* D.I. 77 at 10 (plaintiff's counsel at oral argument refers to Delaware law) *with* D.I. 77 at 4 (at oral argument, defendants' counsel emphasizes one of the required elements for a finding of alter ego "in the Delaware State Courts and under Oklahoma law and under federal law") *and* D.I. 77 at 6 (at oral argument plaintiff's counsel urges the application of federal law to the alter ego question).

Both sides in this dispute have cited *Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.,* 456 F.Supp. 831 (D.Del. 1978). In *Japan Petroleum,* this Court observed that:

> Delaware courts which have considered the question of whether a parent corporation should be subjected to liability for a subsidiary's obligations have applied Delaware law, even in the case of foreign subsidiaries. *See, e.g., Pauley Petroleum, Inc. v. Continental Oil Co.,* [239 A.2d 629 (Del.1968)]; *Buechner v. Farbenfabriken Bayer Aktiengesellschaft,* [38] Del. Ch. 490, 154 A.2d 684 ([Del.] 1959).

456 F.Supp. at 840 n. 17. *See also* 2 E. Folk, R. Ward & E. Welch, *Folk on the Delaware General Corporation Law* § 329.3, at 400 (2d ed.1988) ("[i]t appears that the question of whether to disregard the corporate entity is determined under Delaware law not only when it is a Delaware corporation that would be ignored but also when a Delaware parent corporation would be held liable for the obligations of a foreign subsidiary").

*Japan Petroleum* was a diversity case. A federal court in a diversity action applies the conflicts rules of the state in which it sits to determine what law should be applied. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This patent infringement suit, however, is a federal question case rather than a diversity action. The Court is aware of the existence of a body

of federal common law defining the corporate alter ego doctrine. *See, e.g., United States through Small Business Admin. v. Pena,* 731 F.2d 8, 11–12 (D.C.Cir.1984); *Laborers' Pension Fund v. Litgen Concrete Cutting & Coring Co.,* 709 F.Supp. 140, 143 (N.D.Ill.1989). *See also* 1 *Fletcher* § 41.90, at 194–95 (cum.supp.1988); 2 E. Folk, R. Ward & E. Welch, *Folk on the Delaware General Corporation Law* § 329.3, at 400 n. 44 (2d ed.1988) ("[i]t is common ... for federal courts to determine veil-piercing questions only with reference to federal precedent"); Note, *Piercing the Corporate Law Veil: The Alter Ego Doctrine Under Federal Common Law,* 95 Harv.L.Rev. 853 (1982).

■ In any event, the Court will not launch into a protracted choice of law analysis because it is convinced that regardless of which law is applied to the alter ego question—whether federal, Delaware or Oklahoma common law—the outcome is the same. Fraud or something like it is required. *See, e.g., United States v. Van Diviner,* 822 F.2d 960, 964–65 (10th Cir. 1987) (applying federal common law); *American Bell Inc. v. Federation of Tel. Workers of Pa.,* 736 F.2d 879, 886 (3d Cir. 1984) (federal law); *United States v. Pisani,* 646 F.2d 83, 88 (3d Cir.1981) (federal law); *Seymour v. Hull & Moreland Eng'g,* 605 F.2d 1105, 1111 (9th Cir.1979) (federal law); *Laborers' Pension Fund v. Litgen,* 709 F.Supp. at 143 (federal law); *Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A.2d 629, 633 (Del.1968) (Delaware law); *Mabon, Nugent & Co. v. Texas American Energy Corp.,* [1987–1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,674, at p. 98,092, 1988 WL 5492 (Del.Ch. Jan. 27, 1988) (Delaware law); *Terry Apartments Associates v. Associated–East Mortgage Co.,* No. 4778, 3 Del.J. Corp.L. 560, 564–65, 1977 WL 2567 (Del.Ch. Jan. 31, 1977) (Delaware law); *J.E. Rhoads & Sons, Inc. v. Ammeraal, Inc.,* 1988 WL 32012, at *14 (Del.Super. March 30, 1988) (Delaware law); *Hulme v. Springfield Life Ins. Co.,* 565 P.2d 666, 670 (Okla.1977) (Oklahoma law); *Sautbine v. Keller,* 423 P.2d 447, 451–52 (Okla.1966) (Oklahoma

law); *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373, 1379 (10th Cir.1980) (Oklahoma law); *Mainord v. Sharp,* 569 P.2d 546, 548 (Okla.Ct.App.1977) (Oklahoma law).

For its part plaintiff concurs with defendants' statement of law that fraud or something similar is required (D.I. 77 at 6), and further concedes that there was no actual fraud in this case. (D.I. 77 at 8–9.) Plaintiff nonetheless insists that the alter ego theory should apply to hold the Delaware corporation liable for infringement allegedly committed by its Oklahoma subsidiary, because the failure to do so would work a great injustice upon Mobil. (*Id.* at 9–10.)

Plaintiff is correct inasmuch as fraud, strictly speaking, is not the only basis for finding an alter ego relationship and piercing the corporate veil. "Fraud is frequently cited as a basis on which to pierce the corporate veil, but it is not the only one: 'It may be done only in the interest of justice, when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration[s] ... are involved.' " *Mabon, Nugent & Co. v. Texas American Energy Corp.,* [1987–1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,674, at p. 98,092 (Del.Ch. Jan. 27, 1988) (quoting *Pauley Petroleum, Inc. v. Continental Oil Co.,* 239 A.2d 629, 633 (Del. 1968)). *See also United States v. Van Diviner,* 822 F.2d 960, 964–65 (10th Cir. 1987); *Sautbine v. Keller,* 423 P.2d 447, 451 (Okla.1966).

■ The injustice/inequity alleged by Mobil, however, is insufficient to justify disregarding the separate corporate existence of the Oklahoma subsidiary. Any breach of contract and any tort—such as patent infringement—is, in some sense, an injustice. Obviously this type of "injustice" is not what is contemplated by the common law rule that piercing the corporate veil is appropriate only upon a showing of fraud or something like fraud. The underlying cause of action does not supply the necessary fraud or injustice. To hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping.

■ The law requires that fraud or injustice be found in the defendants' use of the corporate form. In *Zubik v. Zubik*, 384 F.2d 267 (3d Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968), the court noted that:

> [L]imiting one's personal liability is a traditional reason for a corporation. Unless done deliberately, with specific intent to escape liability for a specific tort or class of torts, the cause of justice does not require disregarding the corporate entity. The corporate form itself works no fraud on a [tort victim] who has never elected to deal with the corporation.

*Id.* at 273 (footnote omitted).[11] *See also American Bell Inc. v. Federation of Tel. Workers of Pa.*, 736 F.2d 879, 889 (3d Cir. 1984) ("[t]he alter ego theory allows the court to ignore technical differences between two corporations where the second corporation was created merely to avoid the effect of ... laws"); *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 515 (9th Cir.1984) (one of the elements for piercing the corporate veil is that there be "a fraudulent intent behind the incorporation"); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d at 1379 ("[a] court will disregard the corporate entity where fraud or illegal or inequitable conduct is the result of the use of the corporate structures"); *Seymour v. Hull & Moreland Eng'g*, 605 F.2d at 1113 (in affirming the trial court's decision not to pierce the corporate veil, the Ninth Circuit observed that "[w]hile there was a substantial amount of evidence from which the bad faith of [the defendant shareholders] might be inferred in disregarding their obligations to the [plaintiffs], no evidence of *bad faith or fraudulent intent in forming the corpo-*

*ration* was presented" [emphasis added, footnote omitted]); *Owl Fumigating Corp. v. California Cyanide Co.*, 24 F.2d 718, 721 (D.Del.1928) (in declining to find an alter ego relationship, the court stated that "the facts are not sufficient ... to show that the [subsidiary] was created or has been used to justify wrong, protect fraud, or defend crime"), *aff'd*, 30 F.2d 812 (3d Cir.1929); 1 *Fletcher* § 41.10, at 157 (cum.supp.1988) ("if an intercorporate affiliation is devised for or is being used to accomplish an improper or unlawful purpose, equity has the authority to tear down technical legal barriers and ... grant appropriate relief"); 1 *Fletcher* § 43, at 203 (cum.supp.1988) ("although wrongdoing by the parent need not amount to plain fraud or illegality, the injured party must show some connection between its injury and the parent's improper manner of doing business—without that connection, even where the parent exercises domination and control over the subsidiary, corporate separateness will be recognized").

In *Minnesota Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed.Cir.1985), a patent infringement action, the Federal Circuit upheld the district court's finding that the shareholder defendants were alter egos of the infringing corporation.[12] *Id.* at 1264–65. The Federal Circuit emphasized the relevance to the veil-piercing question of the shareholders' post-tort activity, when conducted to strip the corporation of its assets in anticipation of impending legal liability. *Id.* at 1264. There the district court had concluded that the shareholder defendants *purposely manipulated* the infringing corporation so as to thwart plaintiff's recovery of its judgment. *Id.* at 1265. "This is precisely the situation in which

---

**11.** The court in *Zubik* also pointed out that cases where the corporate veil is pierced invariably involve some degree of *reliance* by plaintiff, contributing to the fraud or accenting the injustice. 384 F.2d at 273. Such reliance is far more common in the context of a business transaction, where, for example, there is a breach of contract, than in the case of a tort, where typically the plaintiff cannot be said to have relied upon defendant's conduct. *Id. See also United States v. Pisani*, 646 F.2d at 88 n. 5.

**12.** Courts are frequently imprecise in describing whether it is the corporation which is the alter

ego of its shareholder, or vice versa. In most circumstances an alter ego relationship is probably a two-way street. That is, where the shareholder is the alter ego of the corporation, the corporation is likewise the alter ego of its shareholder.

In contrast, a pure agency relationship (*see* part II.C. of this opinion, *infra*) is not a two-way street. A subsidiary might be the agent for its parent/principal, but the converse would not necessarily hold true.

270

courts feel most comfortable in using their equitable powers to sweep away the strict legal separation between corporation and shareholders." *Id.*

In marked contrast to the above-cited authorities, the record in this case clearly establishes that the Linear entities have not utilized the corporate form to perpetrate a fraud or to work an injustice upon Mobil. If Mobil's patents were in fact infringed, such infringement commenced in 1980 when the Oklahoma corporation began making and selling stretch film.[13] Not until 1985 was the Delaware parent company incorporated. Given that the alleged infringement by Linear was well underway by 1985, it can hardly be said that the Delaware corporation was formed for the purpose of infringing Mobil's patents. Moreover, the Court has already found that the Delaware corporation did not, as a matter of law, directly infringe Mobil's patents.[14]

It is also readily apparent that the defendants did not use the corporate form to operate a sophisticated shell game, shuttling assets between entities in an effort to escape the effect of any potentially adverse judgment. Uncontroverted evidence reveals that all of the tangible and financial assets of the Linear entities were held by the Oklahoma operating subsidiary. *See* part II.A. of this opinion, *supra.* The Delaware parent company, which committed no actual infringement, owned no assets aside from the stock of its subsidiaries. *Id.* Consequently, the Court concludes that defendants did not employ the corporate fiction to execute a fraud or inflict an injustice upon Mobil. Lacking this necessary element, the alter ego theory cannot be used in this case to pierce the corporate veil of the Oklahoma corporation and thereby hold its Delaware parent liable.

▪ Finally, in rejecting application of the alter ego doctrine on the facts of this case, the Court notes that requiring Mobil to enforce its patent rights against Linear in another forum is not the kind of injustice —if, indeed, it is an injustice at all—which warrants piercing the corporate veil. *See Luckett v. Bethlehem Steel Corp.,* 618 F.2d at 1379 (the possible inconvenience to plaintiff of suing in another forum (namely, in Singapore) is not the type of injustice which warrants piercing the corporate veil). *Cf. Publicker Indus., Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 n. 3 (3d Cir.1979) ("[t]he denial of a federal court remedy where an adequate one exists in state court would fall far short of an injustice that would permit piercing the corporate veil").

In the instant case, to the extent there was infringement of Mobil's patents at all, it was infringement by the Oklahoma corporation; not by the Delaware corporation. All of the Linear entities' tangible assets have been and continue to be held by the Oklahoma corporation; not by the Delaware corporation. Mobil has an adequate remedy against Linear in Oklahoma. In fact litigation is now pending in the Northern District of Oklahoma on the very same operative facts as underlie this lawsuit.

▪ Under ordinary circumstances, a parent corporation will not be held liable for the obligations of its subsidiary. *Japan Petroleum v. Ashland Oil,* 456 F.Supp. at 838. Limited liability is the general rule, not the exception. *Anderson v. Abbott,* 321 U.S. 349, 361–62, 64 S.Ct. 531, 537–38, 88 L.Ed. 793 (1944); *Zubik v. Zubik,* 384 F.2d at 273; D. Drexler, L. Black & A.G. Sparks, *Delaware Corporation Law and Practice* § 8.02, at pp. 8–5 to 8–6 (1988). Disregard of the corporate entity is appropriate only in exceptional circumstances. *Zubik,* 384 F.2d at 273; 1 *Fletcher* § 41.20, n. 8 and accompanying text (rev.perm.ed.1983). "Since it is the exceptional instance where a court will disregard the corporate form, the party who wishes the court to disregard that form 'bears the burden of proving that there are substantial reasons for doing so.'" *Laborers' Pension Fund v. Litgen,* 709 F.Supp. at 143 (quoting *Contractors, Laborers, Teamsters and Eng'rs. Health and Wel-*

---

**13.** *See supra* text accompanying note 2.

**14.** *See* part II.A. of this opinion, *supra.*

*fare Plan v. Hroch,* 757 F.2d 184, 190 (8th Cir.1985)). *See also La Chemise Lacoste v. General Mills, Inc.,* 53 F.R.D. 596, 603 (D.Del.1971). Mobil has shown that it will be unable to carry its burden of demonstrating the existence of such exceptional facts in this case, so as to require piercing the Oklahoma company's corporate veil.

## C. *Agency Theory*

Having disposed of plaintiff's first two theories for imposing liability upon the Delaware corporation, the Court now turns to plaintiff's third and final argument. Plaintiff argues that the Delaware corporation should be held liable under customary agency principles. (D.I. 74 at 48–50.)

 Liability based upon customary agency principles, or pure agency theory, must be distinguished from the so-called agency relationship founded upon complete domination and control of the "agent" by the "principal." Under the latter version of agency, ownership of the agent by the principal is probably required, and the separate corporate existence of the agent is disregarded. *See, e.g., Phoenix Canada Oil v. Texaco,* 842 F.2d at 1476–77; *Stinnes Interoil, Inc. v. Petrokey Corp.,* No. 82C–JN–109 (Del.Super. Aug. 24, 1983) (LEXIS, States Library, Del. file). *See also supra* note 9. The attributes of this latter form of agency (i.e. based upon complete dominion and control by the principal) are generally identical to those present when the corporate veil is pierced because of an alter ego relationship. *See Phoenix Canada Oil v. Texaco,* 842 F.2d at 1476–77; *Stinnes Interoil v. Petrokey, supra. See also supra* notes 9–10 and accompanying text. The Court has already considered and rejected application of the alter ego theory in this case. It likewise concludes that the Delaware corporation cannot be held liable under the equivalent theory of agency based upon complete domination and control.[15]

 Distinct from agency based upon complete domination and control is the pure agency theory.

When legal liability is predicated on [customary] principles of agency, the existence and entity of the agent are not ignored or set aside but affirmed, and the principal held [liable] precisely because the agent did act in the course of his employment and within the scope of his authority. The very opposite is true when the subsidiary's corporate entity is set aside and ignored and the parent held liable.

*Stinnes Interoil v. Petrokey* (quoting *Lowendahl v. Baltimore & Ohio R.R. Co.,* 247 A.D. 144, 287 N.Y.S. 62, 74 (N.Y.App.Div.), *aff'd,* 272 N.Y. 360, 6 N.E.2d 56 (1936)). *See also Phoenix Canada Oil v. Texaco,* 842 F.2d at 1476–77. The pure agency relationship may develop whether the two separate corporations are parent and subsidiary or are completely unrelated outside of the limited agency setting. *Phoenix Canada Oil v. Texaco,* 842 F.2d at 1477–78. Complete or general domination and control of the agent by the principal is not required. *Id. See also supra* note 10 and accompanying text.

 A vital prerequisite to imposing liability based upon customary agency principles is finding a close connection between the relationship of the two corporations and the cause of action. *Phoenix Canada Oil v. Texaco,* 842 F.2d at 1477–78 ("evidence of [the] relationship between the parents and subsidiaries as it bears on [the cause of action] is the proper subject of . . . inquiry"). On the facts of the instant case, the relevant question is whether the alleged principal (the Delaware corporation)

**15.** The Court declines to adopt the notion that a parent company can be held liable for the obligations of a subsidiary purely on the basis of domination and control, without an additional finding of fraud or injustice in using the corporate form. As stated above, agency in this sense of complete domination and control is synonymous with "alter ego," "instrumentality," "piercing the corporate veil," and "disregarding the corporate entity." Litigants cannot, simply by substituting the label "agency" in place of "alter ego," also change the substantive law. Regardless of the label used, fraud or injustice is a necessary element for the theory to apply. *Cf.* D. Drexler, L. Black & A.G. Sparks, *Delaware Corporation Law and Practice* § 8.02, at p. 8–8 (1988).

directed the specific actions of the alleged agent (the Oklahoma corporation) which resulted in infringement of Mobil's patents.

■ The Court concludes that the Oklahoma corporation could not have acted as the Delaware corporation's agent in infringing Mobil's patents. The Oklahoma corporation began making and selling the accused stretch film in 1980, and has continued to do so nonstop ever since. The Delaware corporation was not even formed until five years later in 1985. It is inconceivable that the Oklahoma corporation served as an agent for the subsequently-formed Delaware corporation in making and selling the accused stretch film. Mobil's argument that the Delaware corporation directed the alleged infringement by the Oklahoma corporation is simply a conclusion without factual basis.

Analysis of the agency issue in this case resembles that in *Mabon, Nugent & Co. v. Texas American Energy Corp.,* [1987–1988 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,674 (Del.Ch. Jan. 27, 1988). In *Mabon, Nugent v. Texas American Energy,* defendant Texas American Oil issued debentures in 1979. The following year, defendant Texas American Energy was formed as the parent company for Texas American Oil. Subsequently, in 1986, Texas American Oil defaulted on the debentures.

The bondholders in *Mabon, Nugent v. Texas American Energy* sought to hold the corporate parent liable for the subsidiary's default. The Delaware Court of Chancery denied plaintiffs any recovery against the parent corporation under the agency theory:

> To the extent that plaintiffs' claim is based upon the agency theory, I find it to be deficient. The debentures were issued by [the subsidiary] before [the parent] came into existence. Thus, I do not see how it can be said that [the subsidiary] was the agent of [the parent] when the debentures were issued.[16]

*Id.* at p. 98,092 (footnote added). Identical logic applies in the instant case.

Thus the Court concludes that Mobil's third theory for holding the defendant Delaware corporation liable, like its first two theories, must fail. Consequently, summary judgment will be entered in favor of the Delaware corporation on Mobil's infringement claim.

## III. RULE 25(c) MOTION

■ In addition to defendants' summary judgment motion, there is a second motion presently before the Court. Plaintiff has moved to add the Oklahoma corporation as a party defendant, pursuant to Rule 25(c), Fed.R.Civ.P. (D.I. 56.) At oral argument, plaintiff's counsel indicated that as an alternative to *adding* the Oklahoma corporation, Mobil moved to *substitute* the Oklahoma corporation as a party defendant in place of the Delaware corporation. (D.I. 77 at 13.)

Rule 25(c) provides:

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Rule 25(c) requires a "transfer of interest." In the instant case, such a transfer of interest occurred with the July 15, 1988 merger of the defendant Delaware corporation into the nonparty Oklahoma corporation. Plaintiff's Rule 25(c) motion is thus premised not upon the close relationship of the two Linear corporations during the time of the Delaware corporation's existence, but rather, upon the merger of the Delaware corporation (the transferor) into the Oklahoma corporation (the transferee) which occurred after this lawsuit was brought.

Authorities reveal that joinder or substitution under Rule 25(c) does not alter the

---

**16.** Interestingly, the court in *Mabon, Nugent v. Texas American Energy* focused upon the fact that the parent corporation did not yet exist when the debentures were *issued,* notwithstanding that it did exist by the time *default* occurred.

Likewise, this Court finds most pertinent the fact that the Delaware corporation did not even exist at the time the alleged infringement began, notwithstanding that the infringement is alleged to have continued after its formation.

substantive rights of the parties; it is merely a procedural device designed to facilitate the conduct of litigation. *See, e.g., Minnesota Mining & Mfg. v. Eco Chem,* 757 F.2d at 1263–64; *Matter of Covington Grain Co.,* 638 F.2d 1362, 1364 (5th Cir. 1981); *Television Reception Corp. v. Dunbar,* 426 F.2d 174, 178 (6th Cir.1970) (joinder under Rule 25(c) does "not alter the respective substantive rights of the transferor or of the transferee ... and, regardless of whether the transferee was made a party to the action, its rights ... depend[ ] on the outcome of the litigation between [the plaintiff] and the transferor"); *Federal Deposit Ins. Corp. v. Tisch,* 89 F.R.D. 446, 448 (E.D.N.Y.1981) ("[t]he decision to order substitution or joinder is to be made by considering how the conduct of the lawsuit will be most facilitated; it in no way affects the substantive rights of the transferor or transferee"); 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.08, at p. 25–84 n. 11 (2d ed.1987) ("[t]he transferee and successor in interest under Rule 25(c) stands in the same position in a lawsuit and can assert the same defenses which would have been available to his transferor") (citing *Democratic Nat'l Comm. v. McCord,* 416 F.Supp. 505 (D.D.C. 1976)). Hence if the Oklahoma corporation is added or substituted by way of Rule 25(c), it can be held liable only to the extent that the Delaware corporation would have been liable.

The Court has already determined, however, that the Delaware corporation cannot be held liable for infringing Mobil's patents. *See* parts II.A. through II.C. of this opinion, *supra.* Thus the Oklahoma corporation likewise cannot be held liable in its capacity as transferee in interest of the Delaware corporation. Accordingly, plaintiff's motion to add (or substitute) the Oklahoma corporation pursuant to Rule 25(c) will be denied.

## IV. CONCLUSION

For the reasons set forth in parts II.A. through II.C. of this opinion, *supra,* sum-

mary judgment will be entered in favor of the defendant Delaware corporation on Mobil's patent infringement claim. The Court concludes that the Delaware corporation could not, as a matter of law, have infringed Mobil's patents either directly, indirectly via the alter ego doctrine, or vicariously via an agency relationship.

In addition to the patent infringement claim, plaintiff's amended complaint (D.I. 26) contains two other counts. These counts seek declarations that Mobil has not committed acts of unfair competition or violated antitrust laws in bringing this patent infringement action. These counts derive from and depend upon the patent infringement claim. As the Delaware corporation's summary judgment motion will be granted as to the patent infringement claim, it follows that summary judgment on the remaining two counts is likewise appropriate.

Although defendants' summary judgment motion is styled in the plural,[17] none of the preceding legal analysis applies to Advo, the second defendant. It is apparently undisputed that Advo used Linear's film products. To the extent that the Linear products used by Advo do in fact infringe Mobil's patents, Advo could be held liable to Mobil under the patent law. Moreover, Advo is a Delaware corporation and as such is properly before this Court. Accordingly, summary judgment will not be entered in favor of Advo. Advo may, of course, choose to argue that the stretch film manufactured by Linear and used by Advo does not infringe Mobil's patents, or that Mobil's patents are invalid—but these are questions for another day.

Finally, for the reasons stated in part III. of this opinion, *supra,* plaintiff's motion to add or substitute the Delaware corporation as a party defendant under Rule 25(c) will be denied.

An order will be entered accordingly.

## ORDER

For the reasons set forth in the Court's Opinion entered in this action on this date, it is

---

17. *See* D.I. 75 (*Defendants'* Reply Brief in Support of *Their* Motion to Dismiss Treated as a

Motion for Summary Judgment [emphasis added] ).

ORDERED, ADJUDGED, AND DE-CREED that:

1. The motion to dismiss (D.I. 8) treated as a motion for summary judgment filed by the defendant Delaware corporation Linear Films, Inc., is hereby granted.

2. The motion to dismiss (D.I. 8) treated as a motion for summary judgment filed by defendant Advo–System, Inc., is hereby denied.

3. Plaintiff's motion pursuant to Rule 25(c), Fed.R.Civ.P., to add (or substitute) the Oklahoma corporation Linear Films, Inc., formerly known as Linear Films of Oklahoma, Inc., as a party defendant (D.I. 56), is hereby denied.